# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

_____
|
JOHN DOE,                              :     CASE NO. 3:25-cv-00159-SFR
     Plaintiff,                      :
                                 :
v.                                     :
                                 :
YALE UNIVERSITY, YALE UNIVERSITY       :
BOARD OF TRUSTEES, WENDY TSUNG,        :
K. GEERT ROUWENHORST, JACOB            :
THOMAS, SHERILYN SCULLY, JAMES         :
CHOI, AND ANJANI JAIN,                 :
     Defendants.                     :     FEBRUARY 21, 2025
                                 :
_____     :

## DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION TO PROCEED UNDER A PSEUDONYM

The Defendants respectfully object to Plaintiff's Motion To Proceed Under A Pseudonym (ECF 2 ("Plaintiff's Motion").)  The Court should deny Plaintiff's Motion.

## I.     PRELIMINARY STATEMENT

Plaintiff's Complaint (ECF 1) contains a litany of specific information that identifies Plaintiff through simple Google searches.  A member of the public identified Plaintiff through such searches within four days of Plaintiff filing his Complaint.  The extraordinary privilege of anonymity is not warranted where, as here, Plaintiff identified himself in his Complaint.

Regardless, this is an academic misconduct case and the law does not support the extraordinary privilege of anonymity in these types of cases.  Anonymity would be grossly unfair, particularly given the salacious allegations Plaintiff has made against not only Yale University (the "University"), but six of its professors and/or administrators.  Those allegations include claims that various Defendants—who Plaintiff has publicly identified—discriminated against Plaintiff on the basis of his ethnicity.  Fairness dictates that Plaintiff must proceed under his own name.

Plaintiff cannot meet any of the factors relied on in this Circuit for anonymity. It's a fact of our legal system that Plaintiffs routinely file lawsuits that include embarrassing facts about themselves. As just one example, an employee claiming wrongful discharge must proceed in their own name in a lawsuit even though the disputed facts may be embarrassing or hinder a job search. The same is true here. Plaintiff has not come close to meeting the extraordinarily high standard for anonymity.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's Claims

Plaintiff alleges that the University and six of its professors and/or administrators accused him of engaging in academic misconduct by using artificial intelligence ("AI") and disciplined him through a disciplinary process that he claims was flawed. (*See generally* Cmplt.)

Plaintiff makes salacious allegations against the University and the individual Defendants. As some examples, Plaintiff alleges that:

- "Defendants, including [] Yale EMBA Professors Geert Rouwenhorst and Professor Jake Thomas, the members of the Honor Committee investigation team, the members of the Honor Code Committee, and the members of the FRB, [discriminated against Plaintiff] based on his national origin . . . ."  (Cmplt. ¶ 192; *see also* Cmplt. ¶ 193 ("Plaintiff was wrongfully *singled out, based solely on his national origin*, and not based on any reasonable evidence that Plaintiff had cheated . . . ." (emphasis added)).)

- "Defendants, including [] Yale EMBA Professors Geert Rouwenhorst and Professor Jake Thomas, the members of the Honor Committee investigation team, the members of the Honor Code Committee, [retaliated against Plaintiff] because he complained during the Honor Code investigation and proceedings that he was being discriminated against based on his national origin, and non-native English speaker/writer status." (Cmplt. ¶ 204.)

- "Defendants, including, but not limited to, Dean [Wendy] Tsung, Dean [Sherilyn] Scully, and Honor Code Committee Chairman James Choi, engaged in extensive and multiple efforts to coerce Plaintiff into making a false confession of cheating on his final exam paper, including threatening that he would be deported from the United States" (Cmplt. ¶ 153; *see also* Cmplt. ¶¶ 71, 72, 74, 79, 85, 86 (alleging that Dean Scully and Chairman Choi attempted "to coerce Plaintiff into making a false confession" through threats, etc.).

- Dean Anjani Jain directed the Honor Committee "to consider a new charge" in "violation of Yale's Policies and Procedures" (Cmplt. ¶¶ 128, 129).

- And "Defendants either intended to inflict emotional distress upon Plaintiff because he was the top student in his class, and/or because he was a foreign student." (Cmplt. ¶ 214.)

### B.    The Identifying Information In Plaintiff's Complaint

Plaintiff's Complaint (ECF 1) alleges a litany of specific information that allows anyone to easily identify Plaintiff because there can only be one student at the University who has the background that Plaintiff details about himself in his Complaint.

As some examples, the Plaintiff reveals his identity by alleging that he:

- Is "a citizen of France[] and a resident of Texas" (Cmplt. ¶ 15);

- Earned a degree ("a French Baccalauréat Diploma in science and mathematics, graduating with the highest honors (a 'Mention Tres Bien')") "from the Awty International School in Houston, Texas" (Cmplt. ¶ 28);

- Earned "dual degrees, a B.S.E. in Biomedical Engineering and a B.A. in Political Science, from Rice University in May 2012" (Cmplt. ¶ 29);

- Enrolled in the University's School of Management's Master of Business Education for Executive Program ("EMBA Program") with the Class of 2025 (Cmplt. ¶ 30);

- The EMBA Program is small, enrolling only seventy-one (71) or so students (Cmplt. ¶ 77); and

- He "was on track to be the Student Mashall/Valedictorian" (Cmplt. ¶ 31).

These are only examples of identifying information.  Other identifying information includes allegations (and separately filed documentation, see ECF 2-2) about classes in which Plaintiff was enrolled and when.  (*E.g.*, Cmplt. ¶ 99, 100.)  Such information allows individuals in the University community, such as Plaintiff's classmates, to identify him.

These uniquely specific allegations render Plaintiff readily identifiable to the public.  There can only be one person who graduated from the Awty International School in Houston, Texas, who

obtained dual degrees from Rice University in May 2012, and enrolled in the University's EMBA Program with the Class of 2025.  (*E.g.*, Cmplt. ¶ 28, 29, 30.)

Using the unique allegations in the Complaint, a member of the public easily identified Plaintiff within four days of Plaintiff commencing this action.  By February 7, 2025, someone identified Plaintiff, created the email address "Doev.Yale-AI.Cheating.3.25-cv-00159@protonmail.com," and emailed Plaintiff, a Tech Blogger, and three Defendants. (**Exhibit A.**)  Whoever created that email was able to "easily identify" Plaintiff through Google searches. Simple Google searches using the information in the Complaint reveal Plaintiff's identity. (**Exhibit B** (showing and discussing such searches).)  Plaintiff's allegations reveal his identity and, as Exhibit A shows, Plaintiff has been identified by the public.

### C.    Plaintiff's Motion For Anonymity

Plaintiff seeks the extraordinary remedy of anonymity based on speculative concerns about his "reputation" and possible "impact on his future career, education, and potential earnings." (Plaintiff's Motion at 4.)  He also argues, in conclusory fashion, that "he has been severely emotionally harmed" by the underlying disciplinary process and "the disclosure of his identity . . . will exacerbate that harm."  (Plaintiff's Motion at 4.)  As discussed below, these are the exact arguments that Courts have repeatedly held do not warrant anonymity.

## III.    RELEVANT LAW

### A.    Anonymity Is An Extraordinary Remedy That Is Rarely Allowed

A plaintiff seeking to proceed anonymously also bears a "heavy burden." *Doe v. The Univ. of Akron*, No. 5:15-CV-2309, 2016 WL 4520512, at *2 (N.D. Ohio Feb. 3, 2016); *United States v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020) ("[P]seudonyms are the exception and not the rule, and in order to receive [] anonymity, party must make a case rebutting that presumption.").

"Courts . . . begin with a presumption against anonymous or pseudonymous pleading." *Doe v. Del Rio*, 241 F.R.D. 154, 156 (S.D.N.Y. 2006) (denying anonymity). That presumption "is based on the need for [] courts . . . to have [] accountability and for the public to have confidence in the administration of justice." *Id.* at 157. "Requiring a plaintiff to place his or her name on the complaint serves the [C]onstitutional goal of enabling public monitoring of the [C]ourts: The press and public can hardly make an independent assessment of the facts underlying [C]ourt cases, or even assess judicial impartiality or bias, without knowing who the litigants are." *Id.*

Federal Rule of Civil Procedure 17 requires that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Federal Rule of Civil Procedure 10 mandates that "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). This Court and the Second Circuit have recognized that requiring a plaintiff to sue in his own name "serves the vital purpose of facilitating public scrutiny of judicial proceedings." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008); *see also, e.g.*, *Doe v. Bausch & Lomb, Inc.*, No. 3:18-CV-00352-VLB, 2018 WL 2248418, at *1 (D. Conn. May 16, 2018).

A plaintiff may proceed under a fictitious name in rare circumstances, but "such discretion should be exercised only in exceptional cases." *Doe v. Wal-Mart Stores, Inc.*, No. 3:96-cv-1789-AHN, 1997 WL 114700, at *1 (D. Conn. Feb. 25, 1997); *e.g.*, *Del Rio*, 241 F.R.D. at 157 (denying

anonymity).  Due to the compelling interests served by the default rule requiring plaintiffs to identify themselves, that rule "cannot be set aside lightly."  *Sealed Plaintiff*, 537 F.3d at 189.

"The plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant."  *Id.*  A party "may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs (1) prejudice to the opposing party and (2) the public's interest in knowing the party's identity."  *Id.*  The Second Circuit has endorsed a "non-exhaustive" list of ten factors to consider as part of this balancing analysis, but cautioned that "district courts should take into account other factors relevant to the particular case under consideration."  *Id.* at 189–90.  Courts sometimes find that not all of the Second Circuit's factors weigh strongly in favor of either anonymity or disclosure, and accordingly focus on factors more relevant to the situation at hand.  *See Plaintiffs # 1-21 v. Cty. of Suffolk*, 138 F. Supp. 3d 264, 275 (E.D.N.Y. 2015).  The non-exhaustive factors are:

> (1) [W]hether the litigation involves matters that are highly sensitive and of a personal nature, (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties, (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity, (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age, (5) whether the suit is challenging the actions of the government or that of private parties, (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court, (7) whether the plaintiff's identity has thus far been kept confidential, (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity, (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities, and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 190.

**B.**    **Anonymity Is Not Warranted For Plaintiffs Who Identify Themselves**

The *Sealed Plaintiff* factors have no real applicability to a situation where, as here, the plaintiff has disclaimed any interest in anonymity by disclosing his identity.  The factors moreover presume that the plaintiff has some interest in anonymity that must be balanced against the public's interest and prejudice to the defendant.  *See Sealed Plaintiff*, 537 F.3d at 189 (noting that the point of the test is to balance those competing interests).  A plaintiff who voluntarily identifies himself has no such interest.  *See infra*.  Indeed, even outside the context of plaintiffs who identify themselves but wish to proceed anonymously, Courts need not "list each of the factors *or use any particular formulation* as long as it is clear that the [C]ourt balanced" the plaintiff's purported interest in anonymity against the public's interest in disclosure and the prejudice to the defendant." *Rapp v. Fowler*, 537 F. Supp. 3d 521, 528 (S.D.N.Y. 2021) (emphasis added); *see also Sealed Plaintiff*, 537 F.3d at 189.  Put differently, when a plaintiff chooses to identify themselves, the Court need not even weigh the factors because the plaintiff has disclaimed any interest in anonymity through his actions.

In *Doe v. Nat'l Conf. of Bar Examiners*, No. 1:16-CV-264 (PKC), 2017 WL 74715, at *3 (E.D.N.Y. Jan. 6, 2017), for example, the Court largely ignored the *Sealed Plaintiff* factors after concluding that the plaintiff "fail[ed] to demonstrate *any* valid interest in preserving her anonymity, let alone that the balancing of the parties' and public's interests tilts in her favor" where the plaintiff "ha[d] already publicly disclosed her identity during the course of th[e] litigation" "in a myriad of State and federal court documents," including her amended complaint.  *Id.*

And in *Doe v. Jalilvand*, No. CV 17-6547-R, 2018 WL 11355415, at \*1 (C.D. Cal. Mar. 14, 2018), the Court did not apply any factors when it explained that the Plaintiff had "no need" for anonymity "because he voluntarily reveal[ed] his identity in [his] Complaint." *Id.* [1]

> [The] [p]laintiff may not remain anonymous.  Plaintiff has no need for anonymity because he voluntarily reveals his identity in the first paragraph of the Complaint. Defendant is prejudiced to the extent that she must solely bear the burden of being named publicly in the caption. . . .  As Plaintiff has no need to remain anonymous, his interest [in anonymity] cannot outweigh the public's [interest].

*Id.*

Similarly, in *Doe v. City of New York*, No. 19 CIV. 9338 (AT), 2021 WL 964818, at \*1 & n.1 (S.D.N.Y. Mar. 15, 2021), the plaintiff, an inmate, filed his complaint under a pseudonym but the Court denied anonymity explaining that the "[p]laintiff's identify has not been kept confidential thus far, and [the] [p]laintiff provided *other identifying information, such as his inmate number*, in his complaint." *Id.* at \*2 (emphasis added).  The Court emphasized that "the public" has "a right to know who is making these allegations." *Id.* (internal quotation marks omitted).

And in *Doe v. Wal-Mart Stores, Inc.*, No. 3:96CV1789 (AHN), 1997 WL 114700, \*1 (D. Conn. Feb. 25, 1997), the Court held that anonymity was inappropriate because of publicity efforts:

> [T]he plaintiff has not presented exceptional circumstances which would permit him to proceed without disclosing his identity.  This conclusion is especially appropriate here in view of the fact that the plaintiff voluntarily disclosed the circumstances of the case to the press and made serious charges against the defendant.  "Fairness requires that [he] be prepared to stand behind [his] charges publicly." *Doe v. Shakur*, 164 F.R.D. 359, 361 (*citing Doe v. Bell Atl. Bus. Sys. Serv., Inc.*, 162 F.R.D. 418, 422 (D. Mass. 1995)).

---

[1] Although *Jalilvand* is a Ninth Circuit case, the Ninth Circuit uses several factors to weigh anonymity.  *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000).  In fact, the Second Circuit's factors are based on the Ninth Circuit's factors.  *See Sealed Plaintiff*, 537 F.3d at 190 (relying extensively on the Ninth Circuit's factors as articulated in *Advanced Textile Corp.* to formulate relevant factors).

*Id.*; *Doe v. Gerken*, No. 3:21CV01525(SALM), 2022 WL 167914 (D. Conn. Jan. 18, 2022) ("A plaintiff's interest in anonymity is weakened where anonymity has already been compromised.").

### C.    Anonymity Is Not Appropriate For Academic Misconduct Cases

In cases challenging discipline for academic dishonesty, Courts have generally not permitted anonymity.  Those Courts have rejected the arguments that Plaintiff makes.

In *Doe v. The University of Akron*, 2016 WL 4520512, at *1, a plaintiff sought but was denied anonymity after she was expelled for plagiarism.  The plaintiff made several arguments about anonymity including "reputational" harm due to the "social stigma" associated with plagiarism; harm to her career prospects; and that her claims would involve sensitive medical information associated with her mental health history and use of prescription narcotics.  *Id.* at *3. The Court found that "the stigma associated with allegations of plagiarism and the damage to her reputation and future legal career opportunities" was insufficient to award anonymity. *Id.* at *1– *5.  The Court explained that similar cases "are routinely litigated by law students in their own names" and that the plaintiff's arguments of reputational damage were "[u]nsubstantiated" and "speculative."  *Id.* at *4 (collecting cases).

Likewise, in *Doe v. Trinity College*, No. FSTCV175016597S, 2017 WL 7053895, at *1 (Conn. Super. Ct. Dec. 26, 2017), the Connecticut Superior Court concluded that a Trinity College student had to proceed in his own name in a lawsuit challenging sanctions for academic dishonesty. The plaintiff retained "experts" who "testified that the label of academic dishonesty would . . . negatively affect his employment prospects" absent a pseudonym.  *Id.*  The Court rejected the plaintiff's arguments, noting that a "party's desire to avoid [alleged] economic and social harm as well as embarrassment and humiliation in his professional and social community is normally insufficient to permit him to appear without disclosing his identity."  *Id.* at *2.

Similarly, in *Doe v. Virginia Polytechnic Inst. & State Univ.*, No. 7:18-CV-00016, 2018 WL 1594805, at *1 (W.D. Va. Apr. 2, 2018), a student was accused of cheating and disciplined. The accused student sought anonymity, arguing "harm to his good name and educational progress," including harm to his efforts to attend medical school. *Id.* The Court denied anonymity, explaining that the case did "not present the type of extraordinary circumstances in which the moving party's stated interest in anonymity outweigh[ed] the presumption of openness in judicial proceedings."[2] *Id.* at *2. The Court also rejected the argument that alleged "lasting stigma associated with having been found guilty of cheating and the adverse effects that such [an] allegation would have on [the plaintiff's] ability to compete for admission into medical school" was sufficient to confer anonymity, explaining that "[s]uch concerns, while understandable, do not involve the type of personal information of the utmost intimacy that warrants abandoning the presumption of openness in judicial proceedings." *Id.* (alterations and internal quotation marks omitted). The Court noted that "*federal courts presented with similar facts have consistently reached the same conclusion*" (*i.e.*, that anonymity is not warranted). *Id.* (emphasis added) (collecting cases). The Court noted that the "fact that the plaintiff may suffer embarrassment or reputational harm from being publicly associated with this particular action, regardless of whether he ultimately prevails, does not counsel in favor of allowing him to proceed anonymously." *Id.*

---

[2] The Court also rejected the argument that alleged "lasting stigma associated with having been found guilty of cheating and the adverse effects that such [an] allegation would have on [the plaintiff's] ability to compete for admission into medical school" was sufficient to confer anonymity, explaining that "[s]uch concerns, while understandable, do not involve the type of personal information of the utmost intimacy that warrants abandoning the presumption of openness in judicial proceedings." *Id.* (alterations and internal quotation marks omitted). The Court noted that "*federal courts presented with similar facts have consistently reached the same conclusion*" (*i.e.*, that anonymity is not warranted). *Id.* (emphasis added) (collecting cases). The Court further explained that "concerns regarding public embarrassment and exposure to negative publicity [have been] raised—and *rejected*—in other cases arising from allegations of cheating and dishonesty in the academic context. *Id.* at *4 (emphasis added) (internal quotation marks omitted) (collecting cases). The Court noted that the "fact that the plaintiff may suffer embarrassment or reputational harm from being publicly associated with this particular action, regardless of whether he ultimately prevails, does not counsel in favor of allowing him to proceed anonymously." *Id.*

In *Candidate No. 452207 v. CFA Institute*, 42 F. Supp. 3d 804, 806 (E.D. Va. 2012), the plaintiff was accused of cheating and was suspended. *Id.* The plaintiff sought anonymity, arguing it was necessary to protect him "from public embarrassment and exposure to negative publicity and adverse actions by other persons active in the financial world who might make false assumptions about [the] [p]laintiff's character and abilities." *Id.* The Court denied anonymity, explaining that "interests in avoiding embarrassment, criticism, and reputational harm are not privacy interests in a matter of an especially sensitive or highly personal nature and, otherwise, are not sufficient to overcome the public interest in the openness of [the plaintiff's] civil action." *Id.* at 808. The Court also explained that the nature of the plaintiff's allegations weighed against conferring anonymity because of their serious nature:

> CFA Institute is accused of breaching its contract with a candidate to the widely coveted CFA certification and making an arbitrary, capricious, and erroneous determination that the candidate cheated on a CFA exam and did so through a process that unfairly precluded the candidate from effectively defending himself against the charges of cheating. Certainly, this action exposes CFA Institute to risk of damage to its reputation, which is particularly important to an entity involved with setting standards and conferring credentials recognized throughout the entire finance and investment industry. Given the risks [the] [p]laintiff's suit poses to CFA Institute's reputation, basic fairness dictates that [the] [p]laintiff [], as the Institute's accuser, advance [his] suit under his real and full legal name. Also, permitting [the] [p]laintiff to assert his claims against the Institute without having to disclose his name would invite meritless lawsuits from other CFA candidates against whom the Institute has taken disciplinary action, offering them a forum to tarnish the reputation of the Institute without risk of harm to their own reputations.

*Id.* at 810 (citations omitted); *see also id.* at 811 ("[T]his Court has an obligation to treat defendants summoned before it fairly in connection with the claims brought against them. As noted above, considering the risks this litigation poses to CFA Institute's reputation, basic fairness requires that the identity of the Institute's accuser be disclosed to the public.").

*Gerken*, 2022 WL 167914, is also instructive, even though it is not an academic misconduct case. In *Gerken*, two Yale Law School students sued the University and several individuals

claiming the defendants attempted to "blackball" plaintiffs from prestigious job opportunities in

"retaliation" for plaintiffs "'refusing to lie'" "in support of Yale University's investigation of a

law school professor." *Id.* at *1. The plaintiffs sought anonymity. *Id.* Judge Merriam denied the

plaintiffs' motion, explaining:

> Contrary to plaintiffs' contentions, this action does <u>not</u> involve highly sensitive
> matters of the type recognized by other Courts in the Second Circuit. This case
> does not involve minors, allegations of sexual misconduct, or some other <u>truly</u>
> sensitive matter. Rather, plaintiffs' request is generally predicated on reputational
> harm and lost economic and professional opportunities. "[C]ourts have found that
> evidence of embarrassment, social stigmatization, and economic harm provides an
> insufficient basis for proceeding anonymously." *Doe v. Cornell Univ.*, No. 3:19-
> cv-01189 (MAD) (ML), 2021 WL 6128738, at *5 (N.D.N.Y. Jan. 28, 2021). In
> sum, "courts should not permit parties to proceed pseudonymously just to protect
> the parties' professional or economic life." *Guerilla Girls, Inc. v. Kaz*, 224 F.R.D.
> 571, 573 (S.D.N.Y. 2004) (citation and quotation marks omitted). . . .

*Id.* at *3 (citations omitted).

See also, *e.g.*, *The Univ. of Akron*, 2016 WL 4520512, at *4 (collecting cases); *Doe v.*

*Tennessee Bd. of L. Examiners*, No. 3:22-CV-138-TRM-JEM, 2022 WL 2951447 (E.D. Tenn. July

25, 2022) ("Plaintiff fears embarrassment and harm to his reputation in the community and fears

harm and retaliation in relation to obtaining his law license in Tennessee if he were not allowed to

proceed using a pseudonym. While understandably asserted, the Court finds that generalized and

unspecific fears are not sufficient to establish his heavy burden."); *Doe v. John F. Kennedy Univ.*,

No. C–13–01137 DMR, 2013 WL 4565061, at *4 (N.D. Cal. Aug. 27, 2013) ("With respect to her

academic record, Plaintiff is concerned about revealing the multiple disciplinary referrals and two

failing grades she received, all allegedly as a result of Defendants' unlawful conduct. Poor grades

and academic discipline may be viewed negatively by some, but such facts *do not rise to the level*

*of justifying anonymous prosecution* of a lawsuit, *especially where Plaintiff asserts that the*

*negative academic history is a direct result of the actions by Defendants that she challenges* in this

lawsuit." (emphasis added)); *see also, e.g.*, *Doe v. Brown University*, 209 F. Supp. 3d 460, 466 n.2 (D.R.I. 2016) (noting that anonymity would be revoked if case was not dismissed, in part because of the "risk of unfairness to the" defendant); *Rives v. SUNY Downstate Coll. of Med.*, No. 20CV621RPKSMG, 2020 WL 4481641 (E.D.N.Y. Aug. 4, 2020) (holding that anonymity was not warranted in a case where a student alleged discrimination and sexual harassment).[3]

### D.    Sexual Misconduct Cases Do Not Help Plaintiff

Plaintiff's Motion relies exclusively on sexual misconduct cases.[4]  (Motion at 7.)  Sexual misconduct cases are far different from cases about academic matters.  *See, e.g.*, *Gerken*, 2022 WL 167914, at *3 (distinguishing case alleging that university "blackballed" students from cases that actually involve highly sensitive matters like sexual misconduct cases).  Courts may permit anonymity in sexual misconduct cases because the allegations may be highly sensitive and

---

[3] Defendants are aware of two contrary decisions in this District.

First, in *Doe v. Wesleyan Univ.*, No. 3:19-CV-01519 (JBA), 2020 WL 13564635, at *1 (D. Conn. Sept. 15, 2020), the Court permitted anonymity in an academic misconduct case, but did so because the plaintiff's psychiatrist averred that the plaintiff had a history that included "suicidal ideation, depression, and self-harm" and opined that, in light of plaintiff's mental health history,  the plaintiff would be "'at great risk of significant physical and mental harm'" if she was required to use her real name. Judge Arterton was persuaded by Plaintiff's pre-existing or "severe psychiatric illnesses" and a medical opinion that the plaintiff might commit suicide if required to use her own name. *E.g.*, *id.* at * 3 ("Federal courts in this Circuit and elsewhere consistently hold that severe psychiatric illnesses, including those associated with suicide and self-harm, are subject to substantial societal stigma and constitute intimate, personal matters."); *id.* at *6 (concluding that the "risk of harm should [the plaintiff's] identity be revealed appears significant and substantially likely to occur" in light of her history).  Here, Plaintiff has not submitted any proof, through a medical professional, of a "severe psychiatric illness," and therefore *Doe* does not apply to this case.

Second, in *John Doe v. Yale Univ.*, No. 3:19-cv-01663-CSH (D. Conn.), the Court granted an unopposed motion for anonymity where plaintiff had been expelled from Yale's School of Management and made allegations against a female student.  (*Id.* ECF 40.)    The plaintiff asserted Title IX claims, which as discussed below can strengthen the case for anonymity.  The plaintiff had not been identified by the public through his allegations.  The plaintiff sought anonymity to protect numerous "non-parties" who he referred to by pseudonyms in his complaint but who would have been easily identified if he had been required to use his real name.  (*Id.* ECF 2-1 at 15–16 ("The impact upon non-parties and difficulty in allowing involved non-parties to remain anonymous while plaintiff's identity is revealed warrants the continued use of a pseudonym."); *see also* ECF 1 (using pseudonyms for a number of non-parties).)

[4] In many of the sexual misconduct cases that Plaintiff relies on, the defendants did not challenge anonymity.  *See, e.g.*, *Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016); *Doe v. Univ. of Massachusetts-Amherst*, No. CV 14-30143-MGM, 2015 WL 4306521, at *1 (D. Mass. July 14, 2015); *Doe v. Univ. of S. Fla. Bd. of Trustees*, No. 8:15-CV-682-T-30EAJ, 2015 WL 3453753, at *1 (M.D. Fla. May 29, 2015); *Doe v. Salisbury Univ.*, 107 F. Supp. 3d 481, 484 (D. Md. 2015).  Thus, these cases are of no help to this Court.

personal. *See, e.g.*, *Rapp*, 537 F. Supp. 3d at 528 ("[a]llegations of sexual assault are 'paradigmatic example[s]' of highly sensitive and personal claims and thus favor a plaintiff's use of a pseudonym"); *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006) ("The Seventh Circuit, which *disfavors* the use of fictitious names, has recognized that sexual assault victims are a paradigmatic example of those entitled to a grant of anonymity."); *Prasad v. Cornell Univ.*, No. 5:15-CV-322, 2016 WL 3212079, at *1 n.3 (N.D.N.Y. Feb. 24, 2016) (noting that "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes" (quotation marks omitted)).

But even in sexual misconduct cases, Courts do not always grant anonymity. *See, e.g., John Doe v. Wesleyan University*, No. 3:14-cv-1735-SRU (D. Conn. Aug. 20, 2015), ECF No. 30 ("*Wesleyan Anonymity Ruling*" (copy attached as **Exhibit C**)), *reconsideration denied*, ECF No. 37 (denying motion to use pseudonym in reverse Title IX sexual misconduct case); *Prasad*, 2016 WL 3212079, at *1 n.3 (noting that Magistrate Judge had determined that plaintiff could not proceed pseudonymously); *Juan Doe v. Swarthmore College*, No. 2:15-cv-01355-JCJ (E.D. Pa. June 9, 2015) (denying plaintiff's request to sue college anonymously based on internal sexual assault proceeding); *Doe v. Temple University*, No. 14-04729, 2014 WL 4375613, at * 1-*3 (E.D. Pa. Sep. 3, 2014) (denying motion by student found responsible for sexual assault and expelled); *K. W. v. Holtzapple*, No. 299 F.R.D. 438 (M.D. Pa. 2014) (denying motion by students suing for illegal search and seizure that found marijuana and lead to discipline); *John Doe v. Temple University*, No. 2:13-cv-05156-MSG (E.D. Pa. August 7, 2014) (granting motion to compel plaintiff to use his actual name in sexual misconduct case). That demonstrates what a truly extraordinary remedy anonymity is.

The reasoning by Judge Underhill in *Wesleyan Anonymity Ruling* (Exhibit C) is particularly instructive.  The plaintiff in that case claimed he was improperly disciplined for sexual misconduct.  (Exhibit C.)  He sought anonymity, asserting that the accusations against him were "personal and embarrassing," would harm his reputation and jeopardize his "future career and educational prospects," and that he feared retaliation if his identity were disclosed.  (Exhibit C at 2.)  The Court rejected the plaintiff's arguments.  (Exhibit C at 2–3.)    The Court held: "Student disciplinary proceedings in general and allegations of sexual misconduct in particular are surely sensitive and personal, but the plaintiff has not established that the particular allegations giving rise to this litigation . . . are so sensitive that they justify permitting him to prosecute his case against his University without disclosing his identity."  (Exhibit C at 2–3.)  It explained:

> This is not a case of a plaintiff who must admit to sensitive or embarrassing conduct, or to a demeaning private harm, in order to pursue his claims; on the contrary, the <u>plaintiff claims he was wrongfully accused</u> and publicly harmed.  He ostensibly <u>seeks to *vindicate* his name,</u> which he claims the defendant besmirched, and the nature of the allegations alone is not sufficient cause to conceal it.  Nor does his relatively bare assertion that he fears retaliation rise above what very many civil litigants might genuinely feel.  And because the interested parties to the original controversy are presumably known to each other, <u>it is not clear how concealing his name from the public will avoid whatever risk of retaliation he believes he runs by proceeding with the case.</u>

(Exhibit C at 2–3 (italicized emphasis in original, underlining emphasis added).)

The plaintiff then moved for reconsideration, which Judge Underhill denied.  *See John Doe v. Wesleyan University*, No. 3:14-cv-1735-SRU (D. Conn. Nov. 23, 2015), ECF No. 37 ("*Wesleyan Reconsideration Ruling*" (**Exhibit D**)).  In support of his motion for reconsideration, the plaintiff cited various cases conferring anonymity and submitted a declaration from his employer expressing a preference that the plaintiff not be publicly associated with the case.  (Exhibit D at 2.)  The Court rejected those arguments, holding that anonymity was reserved for extraordinary cases but that the case was not extraordinary.  The Court explained that:

> whatever risk is attendant to being publicly associated with this case is not ultimately avoidable, especially in light of the fact that the plaintiff's identity is presumably already known to all interested parties in the original controversy and is easily discoverable to a much larger community associated with his school.

(Exhibit D at 2.)  Judge Underhill also explained that Wesleyan was "*required to defend itself publicly*, and the plaintiff has not established that the circumstances warrant affording him alone the advantage of anonymity."  (Exhibit D at 3 (emphasis added).)

## IV.    ARGUMENT

### A.    Plaintiff's Allegations Reveal His Identity and Anonymity Is Inappropriate

Plaintiff is not entitled to the extraordinary remedy of anonymity because he identifies himself through unique and particular allegations in his Complaint.  *See, e.g.*, *Doe v. City of New York*, 2021 WL 964818, at *2 (anonymity not warranted where plaintiff included his inmate number in his complaint); *Doe v. Jalilvand*, 2018 WL 11355415, at *1 (anonymity not appropriate where inmate included his name in body of complaint, claiming that only listing it there instead of in caption mitigated harm); *Doe v. Wal-Mart Stores, Inc.*, 1997 WL 114700, *1 (anonymity not warranted where plaintiff shared his claims with media); *Doe v. Nat'l Conf. of Bar Examiners*, 2017 WL 74715, at *3 (anonymity not warranted where plaintiff voluntarily identified herself in various filings, including in her amended complaint).

This Court should go no further and not grant Plaintiff the exceptional relief of anonymity. Plaintiff's name is easily discoverable to anyone who wants to know it.

### B.    Anonymity Is Inappropriate Because Of The Nature Of Plaintiff's Allegations

Anonymity is inappropriate because Plaintiff's allegations (1) concern academic misconduct, (2) are serious and made against individuals as well as the University, and (3)  this is not a case where highly sensitive and personal information is at stake.

First and foremost, Courts generally do not grant anonymity in academic misconduct cases. *See supra*. In these types of cases, Courts reject the arguments made by Plaintiff in support of anonymity. Reputational harm, social stigmatization, and harm to future career opportunities have not convinced Courts to grant anonymity, even when those contentions were far more particularized than Plaintiff's generic contentions. *See, e.g.*, *Doe v. The University of Akron*, 2016 WL 4520512, at *1–*5 (rejecting arguments that the stigma associated with allegations of plagiarism and the damage to her reputation and future legal career opportunities" was sufficient to confer anonymity); *Doe v. Trinity College*, 2017 WL 7053895, at *1–*2 (denying anonymity where two experts testified that association with case would negatively affect plaintiff's employment prospects after noting that "economic and social harm as well as embarrassment and humiliation in his professional and social community is normally insufficient" to warrant anonymity); *Doe v. Virginia Polytechnic Inst. & State Univ.*, No. 7:18-CV-00016, 2018 WL 1594805, at *2 (rejecting arguments that concerns about medical school candidacy and embarrassment and reputational harm were sufficient to confer anonymity); *Candidate No. 452207*, 42 F. Supp. 3d at 808 (holding that "interests in avoiding embarrassment, criticism, and reputational harm are not privacy interests in a matter of an especially sensitive or personal nature"). Plaintiff has not submitted sufficient bases to warrant the extraordinary relief of anonymity.

Second, anonymity is not warranted because Plaintiff makes extremely serious allegations against six University professors and/or administrators, including that they discriminated against him on the basis of his ethnicity. Basic fairness requires that Plaintiff use his own name when making such scandalous allegations against specifically-named individuals. *See, e.g.*, *Doe v. Wal-Mart Stores, Inc.*, 1997 WL 114700, *1 (noting that fairness required that the plaintiff stand behind

his allegations publicly because of their serious nature); *Shakur*, 164 F.R.D. at 361 (same); *Candidate No. 452207*, 42 F. Supp. 3d at 810, 811 (noting that "basic fairness" required the plaintiff to use his own name given that his claims posed a risk of reputational damage to the defendant); *Candidate No. 452207*, 42 F. Supp. 3d at 810 (noting that defendant would be prejudiced by anonymity because anonymity "would invite meritless lawsuits from other[s] . . . whom the [defendant] ha[d] taken disciplinary action" against).

Third, Plaintiff exclusively cites sexual misconduct cases to support his request for anonymity, but sexual misconduct cases are readily distinguishable from academic misconduct cases. *See, e.g., Gerken*, 2022 WL 167914, at *3 (distinguishing claim against University administrators from highly sensitive matters like sexual misconduct cases); *Rapp*, 537 F. Supp. 3d at 528 ("[A]llegations of sexual assault are 'paradigmatic example[s]' of highly sensitive and personal claims[.]")  Courts regularly deny anonymity even in sexual misconduct cases.  *E.g.*, *Wesleyan Anonymity Ruling* (Exhibit C) (noting that anonymity was not warranted because the plaintiff claimed he was wrongfully accused and sought vindication).  Unlike sexual misconduct claims, Plaintiff's claims are not highly sensitive.  Anonymity is not a close call in this case. Conferring anonymity on Plaintiff would cause the exception to swallow the rule and make anonymity commonplace.

C.  **Anonymity Is Barred By The *Sealed Plaintiff* Factors**

Application of the *Sealed Plaintiff* factors preclude anonymity.

1.  *The Issues Are Not Highly Sensitive Or Personal*

"[I]nterests in avoiding embarrassment, criticism, and reputational harm [associated with alleged academic misconduct] are not privacy interests in a matter of an especially sensitive or highly personal nature and, otherwise, are not sufficient to overcome the public interest in the

openness of [the plaintiff's] civil action." *Candidate No. 452207*, 42 F. Supp. 3d at 808; *e.g.*, *Gerken*, 2022 WL 167914; cases cited *supra*. This factor weighs against anonymity.

### 2.    *Identification Poses No Sufficient Risk Of Retaliatory Harm*

Several of the academic misconduct cases cited above rejected arguments that anonymity would prevent harm. *See, e.g.*, *Doe v. The University of Akron*, 2016 WL 4520512, at *2–*3 (denying anonymity where plaintiff argued that claims would involve sensitive medical information associated with her mental health history and use of prescription narcotics). Plaintiff's generic arguments, that he will be upset if he is required to litigate in his real name, are nowhere near sufficient to warrant the extraordinary relief of anonymity. If they were, anonymity would be the norm. Regardless, Plaintiff identified himself through carelessly alleging unique information. This factor weighs against anonymity.

### 3.    *Plaintiff's Other Harms Are The Same Harms Rejected In Other Cases*

Similarly, the other speculative harms that Plaintiff alleges are the same harms Courts reject in academic misconduct cases, as being insufficient to support anonymity. *See, e.g.*, *Gerken*, 2022 WL 167914, at *3 (noting that alleged "'embarrassment, social stigmatization, and economic harm provide[] an insufficient basis for proceeding anonymously'"); *Doe v. The University of Akron*, 2016 WL 4520512, at *3, *5 (holding that "the stigma associated with allegations of plagiarism and the damage to her reputation and future legal career opportunities" was insufficient to award anonymity); *see also, e.g.*, *Abdel-Razeq v. Alvarez & Marsal, Inc.*, No. 14 CIV. 5601 HBP, 2015 WL 7017431, at *4 (S.D.N.Y. Nov. 12, 2015) ("[C]ourts have consistently rejected anonymity requests predicated on harm to a party's reputational or economic interests.").

This factor weighs against anonymity as well.

4.      *The Plaintiff Is Not Particularly Vulnerable*

"If a plaintiff is not a child, this factor weighs against a finding for anonymity." *Gerken*, 2022 WL 167914, at *3 (quoting *Rapp*, 537 F. Supp. 3d at 530).  Plaintiff is not a child.  He is an experienced professional who graduated from college approximately thirteen years ago.  (Cmplt. ¶ 29.)  Plaintiff's age (at least mid-thirties) weighs against the extraordinary relief of anonymity.

5.      *This Action Challenges A Private University, Not The Government*

Courts are more apt to grant anonymity where "the defendants are government entities. . . because a challenge to governmental policy ordinarily implicates a public interest and the government has less of a concern with protecting its reputation than a private individual." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006).  Plaintiff has not sued the government.  He has sued a private University and six of its professors and/or administrators.  Plaintiff makes extremely serious allegations against the Defendants, including alleged ethnic discrimination. (*E.g.*, Cmplt. ¶ 193.)  This factor weighs heavily against anonymity.

6.      *The Defendants Will Be Prejudiced If Plaintiff Proceeds Pseudonymously*

In *Candidate No. 452207*, 42 F.Supp.3d at 810, the Court held that "permitting [the] [p]laintiff to assert his claims . . . without having to disclose his name would invite meritless lawsuits from other [] candidates against whom the [defendant] has taken disciplinary action, offering them a forum to tarnish the reputation of the [defendant] without risk of harm to their own reputation."  Similarly, in *Doe v. Zinsou*, No. 19 CIV. 7025 (ER), 2019 WL 3564582, at *7 (S.D.N.Y. Aug. 6, 2019), the Court held that "allowing plaintiffs to proceed anonymously tend[s] to place defendants at a genuine disadvantage, particularly when it comes to settlement leverage, as a plaintiff may hold out for a larger settlement when the plaintiff knows that the defendant faces reputational risk not reciprocated by the plaintiff." *Id.* (internal quotation marks omitted); *see also*

*id.* (noting other ways defendants are prejudiced by pseudonyms, including by plaintiffs "fabricating or embellishing an account" and holding that defendants are inherently prejudiced when they are required to publicly fight accusations that are lodged from behind the cloak of anonymity). And when Judge Underhill denied the plaintiff's motion for reconsideration in the *Wesleyan Reconsideration Ruling*" (Exhibit D), he emphasized that the defendant university was "required to defend itself publicly." Judge Merriam, in *Gerken*, 2022 WL 167914, at *4, likewise noted that "the prejudice defendants would face from defending against claims prosecuted by an anonymous person at trial far outweigh plaintiffs' interest in not suffering professional embarrassment and any concomitant financial harm." *Id.* (alterations and quotation marks omitted). And in *Doe v. Jalilvand*, 2018 WL 11355415, at *1, the Court held that the defendant was "prejudiced to the extent that she must solely bear the burden of being named publicly in the caption. . . ." The same is true here. Plaintiff has made serious allegations, including that six professionals engaged in ethnic discrimination. Anonymity encourages Plaintiff to exaggerate and stretch and omit facts because he is anonymous. Defendants are clearly prejudiced. This factor weighs against anonymity.

### 7.    *The Plaintiff's Identity Has Not Been Kept Confidential*

As discussed above, the allegations in the Complaint identify the Plaintiff and a member of the public did so within four days of this action being commenced. Identifying Plaintiff is easy through simple internet searches based on unique identifying information included in the Complaint. Plaintiff's identity is also known or easily discoverable by the Yale community. *See, e.g.*, *Wesleyan Reconsideration Ruling*, Exhibit D, at 2 (noting that the plaintiff's identity was presumably already known to individuals within the community and was easily discoverable by

others).   As Plaintiff concedes, he is in a small cohort of students and his identity is certainly discernable in that cohort.  This factor therefore weighs heavily against anonymity as well.

8.    *The Public Has An Interest In Requiring Plaintiff To Identify Himself*

As previously noted: "Requiring a plaintiff to place his or her name on the complaint serves the [C]onstitutional goal of enabling public monitoring of the [C]ourts:  The press and public can hardly make an independent assessment of the facts underlying [C]ourt cases, or even assess judicial impartiality or bias, without knowing who the litigants are."  *Del Rio*, 241 F.R.D. at 156.

Plaintiff's claims that six professors and/or administrators, at one of the top academic institutions worldwide, misused AI and discriminated against him on the basis of his ethnicity require that Plaintiff identify himself so that the public can make an independent assessment about the facts underlying his extremely serious allegations.  *See also, e.g.*, *Candidate No. 452207*, 42 F.Supp.3d at 810 (noting that basic fairness requires disclosure of name given nature of allegations).  Plaintiff's identity is highly relevant to the public's analysis of Plaintiff's claims that he did not engage in academic misconduct and was instead discriminated against because Plaintiff previously has been publicly accused of engaging in serious dishonesty, including fraud.

First, in 2016, an organization that Plaintiff was part of accused him of misappropriating nearly $18,000 and spending it on himself.  The organization posted those allegations on Facebook and Plaintiff then posted a comment denying the allegations.  The post and comments are attached as **Exhibit E**.

Second, in 2020, a company claiming that it had done business with Plaintiff filed a Verified Petition alleging that Plaintiff made "false representations" regarding the structure of entities he was associated with to induce it to enter into a business relationship with those entities.

The Verified Petition, which sought Plaintiff's deposition vis-à-vis alleged "fraudulent transfers," is attached as **Exhibit F**.

These examples demonstrate the importance of Plaintiff disclosing his name, lest the public be deprived of information relevant to evaluating Plaintiff's claims and incorrectly believe that Defendants engaged in discrimination as a result. This factor weighs heavily against anonymity.

9.    *This Case Is Not Purely Legal In Nature*

Relatedly, this case is not "purely legal [in] nature." *Sealed Plaintiff*, 537 F.3d at 190. Plaintiff does not, for example, raise a question regarding the constitutionality of some statute. To the contrary, Plaintiff's claims are based on serious factual allegations that impugn the reputations of six University professors and/or administrators. As just discussed, his identity is highly relevant to the public's ability to fully and fairly evaluate Plaintiff's claims. This factor thus weighs in favor of requiring Plaintiff to put his name behind his allegations.

10.    *There Are Alternative Mechanisms To Protect Confidential Information*

The Court has already implemented alternate mechanisms to protect confidential information in this case by entering its Standing Protective Order (ECF 6.) *See, e.g.*, *Doe v. The Univ. of Akron*, 2016 WL 4520512, at *3 (N.D. Ohio Feb. 3, 2016) (denying anonymity in academic misconduct case because: "With respect to plaintiff's interest in maintaining the privacy of her medical information and alleged disabilities, that confidential information can be protected through a standard protective order, and plaintiff need not proceed under a pseudonym to do so."). The Court's Standing Protective Order allows Plaintiff to mark documents that he believes in good faith implicate his "legitimate expectation of privacy" as "CONFIDENTIAL" and, subject to the process in the Standing Protective Order for challenging such designations, restricts how such documents can be used. This factor therefore weighs against anonymity as well.

## V.    CONCLUSION

Anonymity is not warranted in this case.  The call is not even close.  The Court should deny Plaintiff's Motion.

THE DEFENDANTS,
YALE UNIVERSITY, YALE
UNIVERSITY BOARD OF TRUSTEES,
WENDY TSUNG, K. GEERT
ROUWENHORST, JACOB
THOMAS, SHERILYN SCULLY,
JAMES CHOI, AND ANJANI JAIN

By: */s/ James M. Sconzo*
    James M. Sconzo (ct04571)
    Brendan N. Gooley (ct30584)
    Amanda M. Brahm (ct30581)
    CARLTON FIELDS, P.C.
    One State Street, Suite 1800
    Hartford, CT  06103-3102
    Telephone:(860) 392-5000
    Facsimile: (860) 392-5058
    E-mail:    jsconzo@carltonfields.com
               bgooley@carltonfields.com
               abrahm@carltonfields.com

    Its Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 21st day of February, 2025, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


*/s/ James M. Sconzo*
James M. Sconzo