IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE,<br><br>          *Plaintiff,*<br><br>v.<br><br>YALE UNIVERSITY, YALE UNIVERSITY BOARD OF TRUSTEES, WENDY TSUNG in her individual and official capacity, K. GEERT ROUWENHORST in his individual and official capacity, JACOB THOMAS in his individual and official capacity, SHERILYN SCULLY in her individual and official capacity, JAMES CHOI in his individual and official capacity, and ANJANI JAIN in his individual and official capacity,<br><br>          *Defendants.* | Civil Action No. 3:25-cv-00159<br><br>DECLARATION OF<br><u>JOHN DOE</u> |

  I, John Doe[1], who wish to proceed under pseudonym, for which a separate application seeking the Court's approval has been filed, hereby declares, subject to the penalties of perjury, pursuant to 28 U.S.C. § 1746:

  1. I am the Plaintiff in this action, have personal knowledge of the facts and circumstances set forth in the Complaint in this action, and submit this Declaration in support of my Motion for a Temporary Restraining Order ("TRO") and preliminary injunction. The Defendants in this action, listed above, are referred to collectively herein as "Defendants", "Yale" or "SOM Administration".

  2. Defendants issued a wrongful disciplinary decision and penalties against me, including a one-year suspension from Yale's Executive Master of Business Administration program ("EMBA") in the Yale School of Management ("SOM"), a grade of "F" on my transcript,

---

[1] I ask the Court to also consider this Declaration in support of the pending Motion to Proceed Pseudonymously, if the Court deems necessary.

1

and a disciplinary notation on my academic transcript and record. I seek to immediately restore my access to all courses and academic resources available to all other students in the EMBA program, and ensure that Yale timely confers my degree upon successful completion of my degree requirements.

3. I consider it to be an extraordinary honor to graduate from the prestigious Yale SOM, and I have committed significant dedication and endured self-sacrifice to get admitted and excel in the EMBA program. In exchange for completing a rigorous courseload over two years, I will receive a degree that I expect will bring me life-changing opportunities.

4. To protect the integrity of the degree, all students, including myself, promised to follow a set of rules regarding academic conduct and discipline. Likewise, the Yale SOM itself promised to follow those same rules before removing a student from the program and depriving that student of a degree. The rules enforce fairness, protect the due process of students, and ensure that no student is deprived of a degree wrongfully.

5. The coursework that I completed in my EMBA program to date has been with the class of 2025, and I have built strong personal and professional relationships with this group of students, and with my instructors and professors. My reputation with my classmates and instructors is extremely important to me. The wrongful finding against me of a violation of the Honor Code, and the penalty of a one-year suspension and grade of "F", significantly harms those personal and professional relationships that I have cultivated.

6. I excelled academically in Yale's EMBA program, and was on track to be the Student Marshall/Valedictorian for my 2025 graduating class. This will be jeopardized if my academic record includes a wrongfully issued grade of "F", and I am not permitted to graduate with my class.

7. If injunctive relief is not granted, (and if my true name were disclosed in this action) it will be extremely harmful to my academic, professional, and personal reputation, and will harm my potential future academic endeavors, my future career, and my emotional well-being.

8. As a result of Defendants' conduct, I currently cannot continue my education in Yale's EMBA program, and I lost at least one year of the financial benefits that accompany completion of the prestigious program. If injunctive relief is not granted, litigating this case will cause my reputation to be further wrongfully harmed, and my relationship will be permanently altered for the worse with my Yale peers, instructors, and professors. I will not be able to graduate from my EMBA program with my classmates, nor will I finish in the top of my class. Delaying my graduation will remove my ability to proudly earn this once-in-a-lifetime distinction. No amount of money can remedy that loss. At Yale SOM, grades are curved, and High Honors (HH) are awarded to only the top 10% of students in each class, with Honors given to the next 25%. <u>Valedictorian status is determined by the number of HH grades earned during the first-year core curriculum,</u> meaning it's already been determined who that student should be. Right now, I am ranked #1 in my class based on this system (earning HH in all but 4 first year classes, i.e. 12/16). A copy of my unofficial transcript is attached hereto as Exhibit A. This isn't an honor I can reclaim later. Valedictorian is awarded once. It's tied to the graduating class of 2025. If I'm forced to delay, that distinction is gone forever. This isn't just about prestige—it's about the years of work I've put in, the reputation I've built, and the academic excellence that Yale SOM itself claims to reward. Without an injunction, I will lose the chance to achieve something that only one student per year can earn—not because I didn't perform at the highest level, but because I was wrongfully removed from the program.

9. If injunctive relief is not granted, I will be further severely emotionally harmed by the SOM Administration's unfair and unreasonable process, and the unjust results. If this Motion is not granted, I will suffer enduring and significant impact to my future career, education, and potential earnings, as a result of Defendants' wrongful conduct.

10. During the pendency of this litigation, even though the discipline against me is wrongful, I will be unable to seek further academic degrees with it on my record. In addition, just having a gap year on my transcript and resume is unexplainable and would likely cause me to be rejected from any academic program. I would have to explain why it took me 3 years to complete a 2 year degree. I would therefore also be disqualified from high-level positions, corporate boards, and policy fellowships—opportunities that rely on integrity and trust.

11. I fully intend to pursue further graduate education. I informed the Honor Committee of this fact during my disciplinary hearing. I also discussed this in my Yale SOM admission interviews, so other Yale administrators are also aware of my aspirations for further graduate education. My career trajectory will be permanently damaged. Many of the world's most prestigious employers, leadership programs, and government agencies have strict ethical standards.

12. If injunctive relief is not granted, the value of my Yale degree will be destroyed. The true benefit of Yale is not just the coursework—it's the reputation and network. Yale administrators repeat that to us over and over. Without an injunction, my name will be permanently branded with a scarlet letter. Once a student is associated with an Honor Code violation -- even wrongfully -- that stigma never fully disappears. Even now, my peers are asking why my seat is empty in class (and I refuse to give a straight answer). Without an injunction, the empty seat in the classroom will turn into an empty seat at graduation, and the suspicion I might have done

something wrong will harden into a quiet and lasting exclusion. At Yale and in the professional world beyond, trust and reputation are everything. If my classmates and professors believe — even mistakenly — that I was suspended for cheating, I will be permanently isolated from professional opportunities. My network, which should be a lifelong asset, will instead become a liability.

13. If injunctive relief is not granted, I may face lasting immigration consequences. I am not a U.S. citizen, do not have a green card, and am in the USA on an investor visa. During the course of the disciplinary investigation, the SOM Administration has already weaponized my immigration status against me in an attempt to coerce me to falsely admit to cheating on my exam. If this suspension remains on my record during the course of this litigation, I may be required to disclose it on visa or permanent residency applications, jeopardizing my long-term ability to stay in the U.S. With immigration policies constantly shifting, I have no way of knowing how this wrongful suspension might affect my future status. Again, an immigration officer may ask why it took me 3 years to complete a 2 year degree. I would need to explain that I was wrongly accused, wrongly found responsible, wrongfully issued disciplinary penalties, sued the Defendants, won in court, and then the charges and penalties were dropped thereafter. The suspension alone could be grounds for any immigration officer -- who has full and absolute discretion on approval and rejection of visas -- to deny my visa, and in turn force me to leave the U.S. after spending 15+ years living, working, and building a future here.

14. If injunctive relief is not granted, the Defendants will be rewarded for breaking their own rules. If I were truly responsible for cheating in this case, Defendants would not have needed to violate my due process rights to find me responsible, including inventing new charges mid-process, denying me fair and reasonable notice, and refusing to follow their own procedures and policies. If the Court allows this suspension to stand during the course of this litigation, it

legitimizes due process violations, and administrative misconduct. This is not just about my case—it sets a dangerous precedent for all students. Without an injunction, the SOM Administration can continue to railroad students without accountability.

15. If injunctive relief is not granted, these harms will be permanent and inescapable. There is no financial compensation that can undo the damage to my reputation, career, and future opportunities. The court's intervention is the only way to prevent irreparable harm.

16. If injunctive relief is not granted, I will have to return to the EMBA program with the next class in constant fear that I will be wrongfully accused again of cheating, which causes me further extreme emotional distress.

17. If the Court were to issue an injunction on or before March 7, 2025, I will have only missed four elective classes. I ask that Defendants be required to allow me the choice to: 1) make up those exact courses; 2) take four new electives to meet my credit requirements; or 3) allow me to complete the required courses after graduation (as Yale has allowed for other students).

18. In a letter I received from Defendants informing me of my one-year suspension, I was instructed to "notify" my classmates and instructors of my disciplinary violation and suspension, however I chose not to do so because of the irreparable harm it would cause to my reputation and future career. (*See* Exhibit A to Motion for Pseudonym, December 12, 2024 letter from Wendy Tsung, Assistant Dean, MBA for Executives Program; Compl. ¶ 134).

19. If the specific relief requested in the TRO is not granted, my political career will be permanently tainted. If I am forced to take a gap year due to a suspension, opponents in future elections will weaponize it. They won't debate procedural fairness—they'll say, "Yale suspended John Doe for a year for cheating." That alone could destroy my credibility, cost me endorsements, and erode public trust, making it nearly impossible to run for office. The SOM Administration

knew this—it was on my LinkedIn, in my application, and was a major reason I chose Yale over Harvard Business School (where I was also accepted). Yale SOM's slogan is "Leaders for Business and Society," and I genuinely believed in that mission. My track record reflects that belief—I have already run for office, and I fully intend to do so again. That commitment to public service is at the core of who I am. But without an injunction, my name will forever carry a scarlet letter—not because of anything I actually did, but because of a wrongful suspension that will follow me for life. No amount of explaining or legal victories will change the fact that in politics, perception is reality, and this false stain will always be used against me. Therefore, enforcement of the disciplinary violation and penalties against me during the course of this action, will likely irreparably harm my political future, even if I win the case.

20. During the SOM Administration's disciplinary investigation against me, I was wrongfully pressured to falsely confess to cheating on my final exam by the Chair and another member of the Honor Committee investigatory team - Defendant Dean Sherilyn Scully, who was the Dean of Students of the Yale SOM during time periods relevant to this action and was a member of the Honor Committee investigatory team relevant to this action, and Defendant Chair James Choi, a Professor of Finance in the Yale SOM and the Chair of the Honor Committee investigatory team relevant to this action.

21. I was also not provided the documents that constituted evidence against me in those disciplinary proceedings until after the originally scheduled hearing date (which was later rescheduled), and to date I have never received all of those documents. Defendants also failed to produce exculpatory materials, as required under the rules. In addition, Defendants used AI detection tools that they knew were not reliable —and that Defendants' own policy forbid using— against me in my disciplinary matter.

7

22. Contrary to the rules, after my hearing, the Honor Committee demanded that I return for a second hearing that same day, without reasonable notice, and at a time when I was not on campus or available. Rather than schedule a date and time with me, and provide me with reasonable notice of that second hearing, as required under the rules, the Committee proceeded to hold that second hearing on the same day as my actual hearing, without allowing me to have an opportunity to attend. The Committee proceeded to make a decision against me at that second, un-noticed hearing.

23. The Committee first issued me a finding of responsibility for "not being forthcoming", although I was never charged with or notified of such a charge, and suspended me for one year. At no point prior to this finding was I informed that "not being forthcoming" was a charge against me under consideration, nor was I given proper notice, an opportunity to review evidence, or a change to defend such new charge. The Committee made no findings or determinations as to the actual charge that I "improperly utilized Artificial Intelligence on the final exam in the course". The SOM Administration did not follow the required procedural rules in bringing forth this new charge of "not being forthcoming". I was not given fair notice or opportunity to defend myself against that new charge.

24. Defendants continued to violate the rules during the appellate process. During my appeal, in violation of the rules, my case was unilaterally sent back to the Honor Committee to "continue deliberating" on a new *third* charge of "violation of the examination rules", which was an unreasonably general and vague charge. I was not afforded notice or opportunity to participate, nor were the required procedures followed, with respect to this third charge.

25. The Honor Committee then wrongfully issued me a penalty of an "F" in the course on this third "charge". This determination was made without providing me with any basis for that

decision, with no analysis of the facts and rules that supported such determination, and with no conclusions made that I "improperly utilized Artificial Intelligence on the final exam" - which was the actual charge against me.

26. Another example of the SOM Administration's wrongful acts against me and failure to follow proper procedures is a recent email that the SOM Honor Committee sent out to all SOM students, including those in my EMBA program. On February 19, 2025, the SOM Honor Committee sent out a summary of its actions in the academic year. Number 2 in that email states, "A student used AI on a final exam in violation of exam rules and was not forthcoming with the Honor Committee. Penalty: F in the course and a 1-year suspension." This appears to refer to the disciplinary determination against me, based on the reference to not being "forthcoming", and includes the *false statements* that I was found responsible for using "AI on a final exam", which was not a finding or determination in my matter. Although it does not directly identify me, if a student or instructor were to know about my disciplinary matter, they would be wrongfully informed by the SOM Honor Committee of an incorrect violation against me, for which I was not found responsible.

I declare under penalty of perjury that the foregoing statements are true to the best of my knowledge.

Dated: February 21, 2025

Houston, Texas

*John Doe*
John Doe