IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **JOHN DOE,**<br><br>                              *Plaintiff,*<br><br>v.<br><br>**YALE UNIVERSITY, YALE UNIVERSITY BOARD OF TRUSTEES, WENDY TSUNG** in her individual and official capacity, **K. GEERT ROUWENHORST** in his individual and official capacity, **JACOB THOMAS** in his individual and official capacity, **SHERILYN SCULLY** in her individual and official capacity, **JAMES CHOI** in his individual and official capacity, and **ANJANI JAIN** in his individual and official capacity,<br><br>                              *Defendants.* | Civil Action No. 3:25-cv-00159-SFR |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' EXPEDITED MOTION TO COMPEL DISCOVERY

**NESENOFF & MILTENBERG, LLP**
Attorneys for Plaintiff
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500

**TABLE OF CONTENTS**

I. Defendants' Motion Lacks Required Evidentiary Support ................................................. 1

II. Whether Plaintiff Allegedly Cheated Using AI Is Not Relevant to Plaintiff's TRO Motion 2

III. Defendants' Demand for Production is Overbroad ......................................................... 7

IV. Plaintiff's Case Is Distinguishable From *Doe v. Wesleyan University* Case .................. 7

V. The Evidence Defendants Seek Is Not "After-Acquired" And Plaintiff Does Not Have "Unclean Hands" .................................................................................................................. 11

CONCLUSION ............................................................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*Alexiadis v. New York Coll. of Health Pros.*,
  891 F. Supp. 2d (E.D.N.Y. 2012) .................................................................................... 11
*Ameriwood Industries, Inc. v. Liberman*,
  No. 4:06 CV 524–DJS, 2006 WL 3825291 (E.D. Mo. 2006), *amended by 2007 WL 685623*
  (E.D.Mo. Feb. 23, 2007). .................................................................................................. 10
*Antioch Co. v. Scrapbook Borders, Inc.*,
  210 F.R.D. (D.Minn.2002) ................................................................................................ 10
*Doe v. Wesleyan Univ.*,
  No. 3:19-CV-01519 (JBA), 2022 WL 2656787 (D. Conn. July 8, 2022) .................... 7, 8, 9, 10
*Simon Prop. Group L.P. v. mySimon, Inc.*,
  194 F.R.D. (S.D.Ind.2000)................................................................................................. 10

Plaintiff John Doe (hereinafter referred to as "Plaintiff" or "John Doe"), by his attorneys Nesenoff & Miltenberg, LLP, submits this Memorandum of Law to the Court in Opposition to the Defendants' Expedited Motion to Compel discovery (ECF 25) (Defendants referred to herein as "Defendants" or "SOM Administration").

The SOM Administration seeks to obtain emergency discovery in this case for data that is not relevant, in an apparent fishing expedition. They seek the physical production of "all laptops and mobile phones" that Plaintiff "used" for his "coursework" in his Sourcing and Managing Funds and Investor course. (ECF 25, p. 1). They argue that Plaintiff refused to produce those electronic devices during his Honor Code proceedings, which is controverted in the record. Defendants also argue, without evidentiary support, that there is information on those electronic devices that is "at the heart of" Plaintiff's Motion for a Temporary Restraining Order and Injunction ("TRO Motion"), however their arguments fail on multiple grounds, as discussed below, and thus their motion should be denied. (*Id*.).

I.      **Defendants' Motion Lacks Required Evidentiary Support**

The instant Motion to Compel is fatally flawed, because it presents the Court with facts that are not set forth in the record of this case, and are unsupported by affidavit or other admissible evidentiary support. (*See* ECF 25). Pursuant to Rule 43(c) of the Federal Rules of Civil Procedure, a motion must be based upon evidence that are either already properly in the record of the case, or must present the Court with "affidavits", "oral testimony" or "depositions". F.R.C.P., Rule 43(c). Here, the SOM Administration makes numerous factual assertions upon which they rely as support for their Motion to Compel, without providing the Court with a single affidavit or other admissible evidentiary support. (*See* ECF 25).

1

The SOM Administration claims: "The computing devices will illuminate on whether or not Plaintiff cheated by utilizing [Artificial Intelligence] during the final examinations." Yet they fail to provide any evidentiary support for their contention that "Plaintiff's devices *will contain* evidence relevant to this case and Plaintiff's Motion." (ECF 25, p.3) (emphasis added). They claim merely that it is their "understanding" that the program Pages makes a "time-stamped history of edits on the original hard drive of the device", yet provide no affidavit from an expert making such factual declaration before the Court. (*Id.*). They also affirmatively assert, without evidentiary support, that Plaintiff's computer and mobile phone "*will contain* Internet search history" showing whether Plaintiff used Artificial Intelligence ("AI") during his examination. (*Id.*) (emphasis added).

The SOM Administration fails to provide the Court with an affidavit or other admissible evidence in support of the factual assertions in their Motion to Compel, and thus the motion is fatally flawed and must be denied.

**II. Whether Plaintiff Allegedly Cheated Using AI Is Not Relevant to Plaintiff's TRO Motion**

There was no determination in Plaintiff's disciplinary matter before the Honor Committee on the original charge alleging that he used AI during a final examination. (ECF 1 (Complaint), ¶ 8). This case does not appeal such determination, because no such decision was made. The decision against Plaintiff by the Honor Committee was on a second (un-noticed) charge of not being forthcoming, (*Id.*) and the third (un-noticed) vague charge of generally violating the examination rules. (ECF 1 (Complaint), ¶ 9).

The SOM Administration now endeavors to go on a fishing expedition through the entirety of Plaintiff's personal electronic devices and communications, regarding a defunct false allegation that they were never able to prove against Plaintiff, but now seek to resurrect. The SOM

2

Administration also admits in their motion papers that they had insufficient evidence to find Plaintiff in violation of using AI on his examination, hence why they instead found him responsible for two other violations with which he was never charged. If the SOM Administration had found Plaintiff responsible for using AI on his examination, then they, of course, would have already obtained sufficient evidence to make such determination. However, no such determination was ever made against Plaintiff, and is thus not relevant to Plaintiff's TRO motion.

Moreover, Plaintiff offered to produce his computer to the SOM Administration just after his Honor Committee hearing, but they made a determination instead, relinquishing the request for his computer. (ECF 1 (Complaint), ¶ 114).[1] Plaintiff's Honor Committee hearing was on Friday, November 8, 2024, from approximately 12:45pm-1:45pm. (ECF 1 (Complaint), ¶ 106). During his hearing, Plaintiff offered again to produce copies of any files or data related to any of his assignments or examinations. (ECF 1 (Complaint), ¶ 108). He was initially asked for the "Microsoft Word" files used to produce the PDF files for two final examinations, and Plaintiff explained that he did not use Microsoft Word, but used Apple Pages, and agreed to produce those files. (*Id*.) The hearing then concluded. (*Id*.) At no point prior to, or during the hearing did the Honor Committee ask Plaintiff to produce his computer or cell phone. (*Id*.)

About 15 minutes after the Plaintiff's hearing ended, at approximately 2:02pm, he received a voicemail message from Defendant Dean Wendy Tsung the Assistant Dean of Yale's Executive

---

[1] The SOM Administration now claims that Plaintiff withheld the production of his computer, which he did not, while they have to date refused to produce evidence that was exculpatory to Plaintiff. Prior to that hearing, Plaintiff requested all evidence against him, including scans that were performed by the SOM Administration on his examinations. (ECF 1 (Complaint), ¶ 102-105). Although the Honor Committee had flagged six (6) questions, they have refused to produce one of those reports to date, despite Plaintiff's additional request for that scan just before his hearing. (ECF 1 (Complaint), ¶ 103, 105). Since the Committee refused to produce that sixth scan, Plaintiff ran that question through GPTZero, an AI detection tool, which showed with 96% probability that the sixth question was written by a human. Naturally, the Honor Committee withheld the results of the scan on the sixth question because those results were favorable to Plaintiff. (ECF 1 (Complaint), ¶ 104-105).

Masters of Business Administration ("EMBA") Program, and a member of the Honor Committee's investigatory team. (ECF 1 (Complaint), ¶ 109). Plaintiff returned her call at approximately 2:21pm. (*Id.*) During the call, Defendant Tsung formally asked Plaintiff to send the Honor Committee the Apple Pages files discussed in the meeting, however she did not ask Plaintiff to produce his laptop or cell phone. (*Id.*) Plaintiff informed Dean Tsung that he had already left campus, and when he had access to his laptop he would send the requested files. (*Id.*) Plaintiff was upset after the hearing, because the Honor Committee had ignored his request to discuss the unreliability of the GPTZero reports of his examinations, (ECF 1 (Complaint), ¶ 106-108). Plaintiff asked Defendant Tsung if he could be excused from an upcoming 2:30pm class, which she approved.

Plaintiff acted quickly and sent the requested files to Defendant Tsung within 40 minutes, by approximately 3:03pm. (ECF 1 (Complaint), ¶ 110). In his email he also requested: "Please send us a copy of the analysis of these files. To the extent the Honor Committee maintains any notes of the hearing, please maintain those as well." Plaintiff never received that analysis or any notes from the hearing.

Plaintiff was not on campus for the rest of the day, and missed the 2:30pm class as he had discussed with Defendant Tsung. (*Id.*). Within a half hour of receiving Plaintiff's files, Defendant Tsung called Plaintiff again, at approximately 3:32pm, and Plaintiff was not available to answer the call. (ECF 1 (Complaint), ¶ 111). At approximately 4:02pm, despite having given Plaintiff permission to miss a class and go home, Defendant Tsung texted Plaintiff asking him to come back to campus at 5:30pm that day, and stating: "Please bring your computer with the files." (ECF 1 (Complaint), ¶ 112). About an hour later, at approximately 5:07pm, Plaintiff responded to Dean

Tsung's text message stating "I am unfortunately not able to meet at 5:30pm today. Please let me know what day and times next week you'd like me to make myself available." (*Id.*).

At approximately 5:19pm, Defendant Tsung called Plaintiff and informed him that he needed to return to the Honor Committee to meet with them at 5:30pm that day (within eleven minutes), and to *bring his personal laptop* with the files on it to show the Committee. (ECF 1 (Complaint), ¶ 113). This was not a request for Plaintiff to turn over his laptop to the Committee, but rather a request for them to view the files themselves on his computer. Plaintiff responded to Defendant Tsung that he was not on campus, which she already knew, that he was not available in ten minutes to make it to campus, and that he was happy to make himself available at any other time in the coming week provided he is given reasonable advance notice. (*Id.*). Defendant Tsung threatened that if he did not make himself available *immediately*, the hearing would be postponed and the matter would take longer to resolve. (*Id.*). Plaintiff re-iterated that he was ready, willing, and able to meet anytime in the next week, provided he is given reasonable notice. (*Id.*).

Later that evening, at approximately 8:28pm, the same day as the hearing, Plaintiff received a letter from Defendant James Choi, the Chair of the Honor Committee investigatory team, informing him that the Honor Committee had found him in violation for "not being forthcoming," stating: "The committee determined that you have not been forthcoming to the Honor Committee." (ECF 1 (Complaint), ¶ 114). Before receiving this decision against him, Plaintiff had never received *any* notice from the Honor Committee that he was charged with "not being forthcoming," nor was he afforded *any* of the procedural protections, such as an opportunity to defend himself against that second charge (ECF 1 (Complaint), ¶ 115). In addition, there does not appear to be an affirmative duty in the policies and procedures of the SOM Administration for Plaintiff to turn over his electronic devices during the course of his Honor Code proceedings.

5

Notably, the Honor Committee's decision did not include a conclusion or decision regarding the first charge of "improperly utilize[ing] AI on the final exam" in the Sourcing and Managing Funds course. (ECF 1 (Complaint), ¶ 116). With no notice of that second charge, no opportunity to review evidence, and no opportunity for a hearing, Plaintiff was adjudicated liable for the charge of "not being forthcoming" and imposed a penalty of a *one-year suspension* from the EMBA program, with no grade penalty assessed. (ECF 1 (Complaint), ¶ 118). Despite multiple appeals directly to the SOM Administration, they declined to seek access to Plaintiff's electronic devices, which Plaintiff would have provided. (ECF 1 (Complaint), ¶ 121-138).

As the Court can see from the above, there was no request for Plaintiff to provide his laptop prior to his Honor Committee hearing, and when it was eventually requested later that day, the Committee merely wanted to see the individual files for his exams, and then chose to make a determination without it, instead of waiting for Plaintiff to bring the laptop to them the following week. In addition, neither the Honor Committee nor any of the Defendants have made a request for Plaintiff's laptop between the day of his hearing and the filing of Plaintiff's TRO Motion. The Defendants' request for Plaintiff's cell phones is also a new request made only after Plaintiff filed said Motion.

Respectfully, if the contents of Plaintiff's computer were not important enough for Yale to review at the time of their hearing regarding the allegations of cheating, it is certainly not relevant or necessary here and now, when the SOM Administration is made to answer for their egregious procedural errors. Clearly, this is not the proper venue for such efforts, nor is the demand for production relevant to this case, or to the TRO at issue. Therefore, the Court should deny the Motion to Compel.

### III. Defendants' Demand for Production is Overbroad

Even if the SOM Administration's demand for production were germane to Plaintiff's TRO Motion, which it is not, it is overbroad and should be denied. First, they seek electronic devices that do not relate to the underlying *first* honor code charge in this case. (ECF 25, p. 1). Plaintiff was initially charged with one violation of the honor code for alleged use of AI in completing a specific examination in his Sourcing and Managing Funds and Investor course. (ECF 1 (Complaint), ¶ 8). Yet Defendants don't seek devices that Plaintiff used during that examination, they seek all devices used for all of his "coursework" in that course, not just for the examination. That request is so far beyond the scope of the initial charge, that even if the Court were inclined to grant Defendants' Motion to Compel, the extensive breadth of that request makes it clear that it is a fishing expedition into Plaintiff's personal and private electronic devices and data, far beyond any possible scope of these court proceedings.

In addition, Defendants' demand is overbroad because it seeks to mirror the entirety of the electronic devices, rather than asking Plaintiff to simply produce the requested data. (ECF 25, p. 2). There is no compelling reason in this case why the SOM Administration would need access to all of the data in all of Plaintiff's electronic devices, if what they seek is merely any record of edits to his final examination, or searches on the internet for AI tools. Thus, this demand is overbroad, unreasonable, and should be denied by the Court.

### IV. Plaintiff's Case Is Distinguishable From *Doe v. Wesleyan University* Case

The SOM Administration incorrectly argues that the *Doe v. Wesleyan University* case is analogous to the case at bar, and thus the Court should similarly order that Plaintiff's electronic devices should be "mirrored" and produced to Defendants. However, that case is distinguishable from the instant case in multiple ways.

First, counsel for Defendants states, "As *Wesleyan*, 2022 WL 2656787, at *4 establishes, students often use their mobile phones to access improper materials even though they may complete an assignment, etc. on a laptop." (ECF 25, p. 4). However, in *Doe v. Wesleyan Univ.*, No. 3:19-CV-01519 (JBA), 2022 WL 2656787 (D. Conn. July 8, 2022), the student was actually expelled for using her phone during an in-person, paper examination, in the exam room, which the school determined violated the honor code. (*Id*. at 6). Whether some students sometimes cheat using a phone during a final examination does not support the proposition that all students in disciplinary proceedings should be compelled to produce all the contents of all electronic devices.

Next, the plaintiff in *Wesleyan* claimed in her case that she was denied a "fair process", as here, however in that case she was also challenging *whether she cheated using her phone* during an examination. Here, to the contrary, although Plaintiff clearly states that the underlying initial charge against him was false, he does not have to prove in his case that he did not use AI during his examination, because there was no such determination in his case, and he does not appeal such determination. Plaintiff, on the other hand, is challenging procedural/contractual violations, including how the SOM Administration morphed the initial charge into a second, un-noticed charge of not being forthcoming, and then into a third, un-noticed charge of vaguely violation the rules of the examination.

Although Defendants are correct that Plaintiff believes that his suspension and the grade of F issued to him as a penalty was a "wrongful result" (ECF 1 (Complaint), ¶ 138), that result does not relate to a finding against him of using AI on his examination, and thus Defendants' demand for the production of evidence that would exonerate Plaintiff on that initial charge is not relevant in this case, nor to the pending TRO motion.

The *Doe v. Wesleyan Univ.* case also differs from the case at bar because in that case,

the student was *found* in violation of the honor code for using her phone during an examination, and then that student used a mirror image of her phone contents in her own defense. *See Wesleyan Univ.*, No. 3:19-CV-01519 (JBA), 2022 WL 2656787. Later it appeared that she may have deleted internet search data from her phone, and when she refused to cooperate with the defendants in that case in discovery to produce a new mirror image of her phone, she was ordered by the court to cooperate. *Id*. at 4. Here, on the other hand, the contents of Plaintiff's computers and phones were never requested or reviewed by the Honor Committee prior to his hearing, and were not used in making a determination against him on other charges.

Next, in the *Doe v. Wesleyan Univ.* case the court actually ordered the defendant to narrow the scope of the discovery request, describing the type of data was sought, and allowed the plaintiff to withhold privileged data in the due course of discovery. *Id*. The Motion to Compel in this case is also overly broad, does not relate to the material subject matter of the litigation, and should also be denied.

In addition, in *Doe v. Wesleyan Univ.,* the plaintiff actually conceded to the relevancy of her electronic devices to the litigation, *Id*., which is not the situation here. In fact, here Plaintiff's electronic devices are not relevant in this litigation, as the detailed analysis herein provides. Where there are broad discovery demands, and only a vague or unsubstantiated connection between the claims in the case and the electronic devices, the Court should lean against the mirror imaging of those devices:

> *Courts have been <u>cautious in requiring the mirror imaging of computers</u> where the request is <u>extremely broad</u> in nature and the <u>connection between the computers and the claims in the lawsuit are unduly vague or unsubstantiated</u> in nature.* For example, *a party may not inspect the physical hard drives of a computer merely because the party wants to search for additional documents responsive to the party's document requests*. [A court has previously] declined to allow the examination of any ESI other than the information that had been

9

deleted because the requesting party had not demonstrated that the producing party was unwilling to produce relevant evidence.

*Ameriwood Industries, Inc. v. Liberman,* No. 4:06 CV 524–DJS, 2006 WL 3825291 at 4 (E.D. Mo. 2006), *amended by* 2007 WL 685623 (E.D.Mo. Feb. 23, 2007).

This case is also distinct from the *Wesleyan* case because there are no alleged discrepancies with data already produced in this case, or during the course of the disciplinary investigation. *Id.* at 4. *See also, Simon Prop. Group L.P. v. mySimon, Inc.,* 194 F.R.D. 639, 641 (S.D.Ind.2000) (allowing plaintiff to mirror image defendant's computers where there were "troubling discrepancies" in defendant's document production); *Antioch Co. v. Scrapbook Borders, Inc.,* 210 F.R.D. 645, 652 (D.Minn.2002) (finding that defendants' computer equipment may have relevant information which is being lost through the normal use of the computer and ordering defendants to allow plaintiff's computer expert to make a mirror image of defendants' hard drives).

Therefore, courts have allowed mirror imaging of electronic devices only where there is a clear connection between the contents of those devices and the plaintiff's claims, when the requested documents were not produced during discovery as required, and when there is evidence that discovery was incomplete, improper, or that data was deleted. Defendants' papers fail to show that those factors exist in this case, and thus the Motion to Compel should be denied.

Thus, through this blatant violation of Plaintiff's procedural and contractual rights, the SOM Administration relinquished their right to inspect the data on his computer, and in fact never requested it again during the multiple administrative appeals before them. Therefore, even if the requested electronic devices were relevant here, which they are not, the Defendants would still not be entitled to those devices, and their Motion to Compel should be denied.

10

V.  **The Evidence Defendants Seek Is Not "After-Acquired" And Plaintiff Does Not Have "Unclean Hands"**

Defendants argue that they are entitled to seek the requested mirror imaging of Plaintiff's electronic devices because Plaintiff's hands are "unclean", and the evidence has some "after-acquired evidence" special treatment. (ECF 25, p. 2-3). They cite only to the *Alexiadis v. New York Coll. of Health Pros.* only for the proposition that "after acquired evidence" of misconduct by a student who was dismissed from the college for other misconduct could not be resolved at the summary judgment stage, and thus the question should go to trial. *Id.*, *citing Alexiadis v. New York Coll. of Health Pros.*, 891 F. Supp. 2d 418, 433 (E.D.N.Y. 2012). It is unclear the purpose of the inclusion of this case in Defendants' papers. That case does not support Defendants' argument that they are somehow "entitled" to Plaintiff's electronic devices.

In addition, the fact that counsel for the SOM Administration accuses Plaintiff of having "unclean hands" because he possesses his personal electronic devices that the Defendants never sought or which Defendants extinguished their request for, is disconcerting. Plaintiff fully cooperated at all stages of the disciplinary investigation and proceedings against him, including producing his examination files, with all metadata intact, and he offered to produce his computer when the SOM Administration requested it. (ECF 1 (Complaint), ¶ 156). However, as discussed above, Yale was clearly never interested in the truth and never provided Plaintiff the opportunity to produce his computer before the Honor Committee hastily made a determination against him on the second, un-noticed charge. (*Id.*).

## **CONCLUSION**

For the foregoing reasons, and such other reasons as may appear just to the Court, Plaintiff requests that the SOM Administration's Motion to Compel discovery be denied in its entirety.

Dated: March 12, 2025  
       New York, New York

Respectfully submitted,

**NESENOFF & MILTENBERG, LLP**

*/s/ Christine D. Brown*
**Christine D. Brown, Esq.**
Stuart Bernstein, Esq.
(admitted *pro hac vice*)
Kimberly S. Courtney, Esq.
(*pro hac vice* admission pending)
363 Seventh Avenue, 5th Floor
New York, New York 10001
212-736-4500 (telephone)
cbrown@nmllplaw.com
sbernstein@nmllplaw.com
kcourtney@nmllplaw.com

*Attorneys for Plaintiffs*