IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN DOE,<br><br>                              *Plaintiff,*<br><br>v.<br><br>YALE UNIVERSITY, YALE UNIVERSITY BOARD OF TRUSTEES, WENDY TSUNG in her individual and official capacity, K. GEERT ROUWENHORST in his individual and official capacity, JACOB THOMAS in his individual and official capacity, SHERILYN SCULLY in her individual and official capacity, JAMES CHOI in his individual and official capacity, and ANJANI JAIN in his individual and official capacity,<br><br>                              *Defendants.* | Civil Action No. 3:25-cv-00159-SFR |

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF PLAINIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER AND
<u>PRELIMINARY INJUNCTION</u>**

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff John Doe*

Christine D. Brown, Esq.
Stuart Bernstein, Esq.
(admitted pro hac vice)
Andrew T. Miltenberg, Esq.
(admitted pro hac vice)
Kimberly S. Courtney, Esq.
(admitted pro hac vice)
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
cbrown@nmllplaw.com
sbernstein@nmllplaw.com
amiltenberg@nmllplaw.com
kcourtney@nmllplaw.com

# **TABLE OF CONTENTS**

A. Question Whether Plaintiff Used AI Is Not Relevant Here - Honor Committee *Did Not Find* That Plaintiff Used AI. ................................................................................................................1

B. Evidence Supports That Plaintiff *Was* Forthcoming. ........................................................2

C. SOM Administration' Arguments That Plaintiff Will Not Suffer Irreparable Harm Are Flawed. ...3

D. Plaintiff *Can Successfully* Timely Complete His EMBA Program. ..................................4

E. Defendants' Additional Inaccuracies And Misrepresentations. ..........................................7

F. Plaintiff Has Met The Requirements For An Injunction. ...................................................9

CONCLUSION ................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Cacchillo v. Insmed, Inc.*,
   638 F. 3d 401 (2d Cir. 2011) ................................................................................................9
*Doe v. Brown Univ.*,
   210 F. Supp. 3d 310 (D.R.I. 2016) ......................................................................................10
*Winter v. Nat'l Res. Defense Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................................................10

The arguments set forth in the Defendants' Objection to Plaintiff's Motion for a TRO and an Injunction rely on well documented facts *controverted* in the record. Thus, the conclusions based thereon, upon which Defendants rely for those arguments, are flawed and should be disregarded by the Court.

**A. Question Whether Plaintiff Used AI Is Not Relevant Here - Honor Committee *Did Not Find That* Plaintiff Used AI.**

The question whether Plaintiff used AI is not relevant here for two reasons. First, there was *no finding* that Plaintiff cheated using AI, *nor was a penalty issued* for such violation. (ECF 1, Complaint, "Comp." ¶114-17; Plaintiff's Memorandum of Law ("Pl. Memo"), p. 5). This case does not appeal any such determination. After reviewing all the relevant evidence, including the native examination file, the Honor Committee *failed to conclude* that Plaintiff had cheated using AI. (*Id.*). They instead grasped at straws to find another avenue to persecute him. (*Id*; Comp. ¶122[1]). The SOM Administration is simply attempting to distract the Court from the *actual* determinations of the Honor Committee, and the procedural issues that led to those determinations, by making a post hoc false assertion that Plaintiff cheated on his examination using AI. (ECF 41, Defendants' Memorandum of Law in Objection, "Def. Memo", p. 2).

The SOM Administration cite a singular sentence, not cited in any decision against Plaintiff as the purported entire basis for both decisions. (Def. Memo. p. 2, 5). Defendants claim there is a "substantial overlap" between a ChaptGPT result and Plaintiff's answer (*Id.*), yet they acknowledge that the answers are not identical. (Def. Memo. p. 31). Moreover, they fail to provide the methodology and prompt history, including how many times each prompt was used, etc.[2]

---

[1] In the history of Yale's SOM, no student has ever been found liable for the charge of "not being forthcoming" on its own. Rather, "not being forthcoming" was always applied as an aggravating factor to an underlying Honor Code violation.

[2] It also appears that the one prompt they included from Question 2G is not the actual examination question, and may be crafted to seek a specific result.

This is far from "ample evidence"[3] that Plaintiff cheated using AI (Def. Memo. p. 16). The Committee failed to provide Plaintiff with reasoning, findings of facts, and conclusions of violations of specific rules or codes, and thus stripped him of his right to a reasonable appeal and challenge of those determinations. In fact, what *really* occurred is that the Honor Committee did consider the GPTZero scans, and then Plaintiff successfully challenged the validity of those scans during his hearing.[4] The Committee *did* consider those scans as evidence, otherwise Defendants would not have included them as evidence in the record of this case. Then the Committee made a decision against him based on no analysis of the facts, rules or codes. Post hoc rationalizations cannot substitute for the Committee's failure to make factual determinations and actual conclusions based on a *specific rule or code section*. When Plaintiff asked what rule or code he violated, his question went unanswered.[5] (Compl. ¶ 81-82).

**B. Evidence Supports That Plaintiff *Was* Forthcoming.**

Defendants claim that Plaintiff was "indisputably not forthcoming", cheated using AI on his examination, and was "thus properly disciplined". (Def. Memo, p. 2; p. 2, n1). They argue that "neither the equities nor the public interest support Plaintiff". (Def. Memo, p.2, n1).

The SOM Administration misrepresent that Plaintiff "*ignored several requests* by Yale for *information* relevant to his case and was *properly suspended* as a result." (Def. Memo, p. 2)(emphasis added). The SOM Administration *never requested* Plaintiff's native Pages file before his Honor Committee

---

[3] If there were truly "ample evidence" that Plaintiff cheated using AI, then he would have been found responsible for that charge, *and* the Defendants would not be currently seeking Plaintiff's laptops and cell phones.

[4] Plaintiff presented a variety of reliable evidence to the Committee, which is why the Honor Committee could not in good faith rely on those scans in making a determination against him. Comp. ¶ 56-59 (Yale, Aaronson, Tian, others determined AI detection tools are unreliable); ¶ 60-61 (CPTZero instructs "should not be used to punish students"); ¶ 62 (AI detection unfairly targets non-native English writers).

[5] On August 16, 2024, Plaintiff responded to Defendant Choi's August 10, 2024 email: "Until now, Wendy and Dean Scully have told me that this matter has not been formally referred to the Honor Committee. Further, I was told that you had already received a copy of the submitted exam. I am of course happy to comply with the SOM Policies at all times. If you believe I have not followed any policy, can you please let me know which one so I can respond appropriately?" Plaintiff concluded, "I am always happy to cooperate with your process as appropriate."

hearing (Compl. ¶ 108), and he promptly provided it *within 40 minutes* of the request. (Compl. ¶ 109-110) (*See* Compl. ¶ 108).

In addition, after his hearing the SOM Administration asked Plaintiff to return for a meeting with the Honor Committee and to "bring" his laptop to "show" the Committee (not to produce it or turn it over for examination) (Comp. ¶ 7, 113; Pl. Memo p. 5, 22). Plaintiff *agreed* to do so at the earliest possible time and date the following week. (Comp. ¶ 112; Pl. Memo. p. 22). Since it was Friday, and they gave Plaintiff permission to leave campus and miss class, he was not available to return for an un-noticed hearing that same day. (Comp. ¶ 109-113; Pl. Memo. p. 22). Plaintiff's agreement to have that second hearing upon reasonable notice in no way constitutes *ignoring* that request. Nor were there *several requests* for him to return with his computer. (Comp. ¶ 109, 113; Pl. Memo. p. 22).

The Honor Committee lacked any analysis of evidence to support a determination that Plaintiff was not forthcoming, and Plaintiff was never given an opportunity to defend such charge. Post hoc rationalizations and manipulations of fact in Defendants' Memorandum cannot remedy this. Defendants fail to justify why the disciplinary proceedings were riddled with due process and other procedural violations. Plaintiff was found responsible for violations for which he was <u>never</u> charged, nor given an opportunity to defend. Thus, there is no basis to conclude that Plaintiff was "not forthcoming" and "properly disciplined".

### C. SOM Administration' Arguments That Plaintiff Will Not Suffer Irreparable Harm Are Flawed.

The SOM Administration represent that the EMBA program is thus "not akin to undergraduate studies where an interruption could require explanation by a student".[6] (Def. Memo. p. 2). To the contrary, irreparable harm may exist, even for a professional, while enduring extended litigation in order to exonerate

---

[6] It is also of no consequence to this motion whether Plaintiff's companies may have been financially successful. (Def. Memo. p. 4). Even a financially successful professional deserves a fair disciplinary process. Plaintiff will also suffer irreparable harm if he is blocked from further graduate education in the immediate future.

3

himself. As detailed in Plaintiff's Memorandum of Law, Plaintiff will be seriously and irreparably harmed if he is not allowed to catch up to his classes and return to the program, because he will lose his class ranking, he will lose his connections and relationships with his colleagues and instructors by not returning and graduating with them, he will be unable to proceed with his planned further graduate study, the value of his degree will be negatively impacted, he may face immigration consequences[7] during the pendency of this action, and he will endure severe emotional harm. (Comp. ¶ 134, 139-187; Pl. Memo. p. 7-9). There is no financial compensation that can remedy these harms.

In addition, Plaintiff will in fact be impacted by a gap in completion of the program. Failure to grant injunctive relief may also harm Plaintiff's existing business relationships, because the real estate industry performs research on court proceeding before engaging in agreements and loan underwriting.[8]

D. **Plaintiff** *Can Successfully* **Timely Complete His EMBA Program.**

The SOM Administration misrepresent the EMBA program is managed, and their ability to re-incorporate Plaintiff. They state: "If a student misses a course, there is no opportunity to take it again in the Program until the following year." (Def. Memo. p. 3). However, the "following year" is the Fall of 2025, which would still allow Plaintiff to graduate in May of 2025 with his class, even if he had to make up classes in the Fall. (Pl. Memo. p. 10). Plaintiff's suspension is for one year from November 2024, so without the injunction he would not be able to resume taking classes until likely December 2025 or January 2026. Although the courses in the EMBA program may not all be the same as in SOM's regular MBA program (Def. Memo. p. 3), there are sufficient classes available as electives for Plaintiff to take. The fact that the regular MBA program may not offer "all or most EMBA courses in a particular term" (Def. Memo. p. 3), is also not consequential here.

---

[7] Determination that Plaintiff was not "forthcoming" is akin to lying which could violate an immigration standard.
[8] It is also of no consequence to this motion whether Plaintiff's companies may have been financially successful. Does Plaintiff's career success mean he is less entitled to due process? (Def. Memo. p. 4).

Defendants also contend that class attendance is such an "essential component" of the EMBA program that even missing several classes "can result in a failing grade". (Def. Memo. p. 3). However, other students in the EMBA program *have been allowed* to miss *all or most* in person classes and not obtain failing grades.[9] (Pl. Memo. p. 10). Plaintiff could still catch up and collaborate with his Learning Teams in a meaningful way, and Defendants fail to disclose whether any students have ever been permitted to do so.[10] (*See* Def. Memo. p. 3-4).

The following is a detailed and accurate outline of the current status of Plaintiff's coursework and how he could reasonably rejoin his program and graduate in May of 2025:

**Sourcing and Managing Funds Grade**
- The SOM Administration incorrectly claims that Plaintiff must "remediate" his grade in Sourcing and Managing Funds, and take an additional 10 classes (Def. Memo. p. 17-19). This contradicts the SOM Administration's own representations.
- Prior to Defendant Jain's November 19, 2024 decision to withhold Plaintiff's grade and charge him with a vague exam rule violation, Defendant Tsung confirmed that the course professors met between Nov. 11 and 15 to award Plaintiff that grade. (Representations made Nov. 11 (orally), 12 (via email), and 14 (via email)(*See* Compl. ¶ 119, 126, 133).
- It is undisputed that Defendant Tsung clearly stated, "There is no grade penalty outcome from the Honor Committee decision". (Def. Memo. p. 15).
- SOM Administration made three assurances to Plaintiff that the Honor Code violation *would not impact his grade*, which should be honored. The imposition of a grade of F was later made arbitrarily, as a punishment for Plaintiff's appeal. No "remediation" is required.

---

[9] Moreover, it is Defendants' improper handling of his disciplinary matter that brings us before the Court.

[10] The Plaintiff is in his situation due to the SOM Administration's wrongful acts against Plaintiff, and they can certainly be expected to provide him with a reasonable accommodation to ensure that he can, at a minimum, graduate in 2025 and be able to complete any additional courses over the summer. This does not necessitate a significant burden on SOM, the instructors, or the other students.

**Plaintiff's Five Courses In Progress**
- The SOM Administration claim that there are still ten (10) classes that Plaintiff must complete, however four (4) of those are already underway and those classes began after March 7, 2025, with only two (2) sessions held to date. One (1) class starts in May.
- Rejoining these classes would be straightforward, involving simply allowing the Plaintiff to review the recordings (which is permitted under SOM policy) and complete the remaining coursework. Contrary to Defendants' contentions, this would impose no significant burden on the SOM program, and aligns with existing practices.

**Plaintiff's Four Completed Classes Missed During Suspension**
- There were only four (4) classes that Plaintiff has missed entirely. All of those classes were recorded, and SOM's policies allow Plaintiff to view those sessions.
- Plaintiff could complete those classes by watching the recordings (as an equivalent to the attendance component), and submitting the required assignments (around one or two submissions per class), which would *not* constitute a significant burden for grading purposes, since those assignments would have been graded anyway.
- The participation component is not enforced as an essential element of the classes, since many students in the EMBA program earn passing grades without participating.
- Plaintiff has already submitted every assignment for two (2) of those four (4) classes, except for a midterm and final examination which were not yet released at the time of Plaintiff's suspension. All of Plaintiff's homework assignments in those classes were completed by him ahead of time and turned in before he was suspended.[11] Thus he has really only missed about 2 weeks total worth of class time to make up, plus approximately thirty (30) hours of exam and homework time that he would have to make up.
- If Plaintiff were to be permitted to return by April 7, 2025, he will have missed twenty (20) class days, and still have forty-two (42) calendar days to catch up. Each class day consists of 5.5 hours, so he would need to make up one hundred and ten (110) hours of class time, plus allocate approximately thirty (30) hours for exams and homework. Over the course of those forty-two (42) days, this only comes to about three (3) hours per day, which is a very manageable workload, hardly constituting "months" of work.
- Therefore, Plaintiff can clearly and reasonably complete those four (4) classes through recordings and assignments in satisfaction of those credit requirements.

**Plaintiff's Colloquium Requirement**
- The final class in the EMBA program, the Colloquium, is a year-long course that involves guest speakers, and any missed sessions can be made up through a paper.
- Plaintiff already submitted the Fall paper prior to his suspension, fulfilling the requirement.
- Plaintiff would need to submit an additional paper in the Spring once re-admitted. The SOM Administration has no legitimate basis to deny Plaintiff credit for the Colloquium.

---

[11] Defendants claim that Plaintiff has missed "months" of classes, which is not accurate. Between his suspension on November 19, 2024 and March 7, 2025, Plaintiff only missed fourteen (14) days of classes. He subsequently missed an additional four (4) days of classes on March 7, 8, 21, and 22. As of March 23, 2025, Plaintiff's total absence amounts to eighteen (18) days of classes, with fifty-seven (57) days remaining until graduation on May 19th, giving Plaintiff over three times the number of days remaining to complete his coursework than the number of days of class he needs to make up (Def. Memo. p. 17-18).

**SOM Administration's Precedent For Allowing Plaintiff's Request**
- The SOM Administration has allowed and is allowing other students to walk during graduation, in May 2025, and complete at least one core class after graduation, and have their diplomas mailed in the Fall.[12]
- This shows SOM flexibility, despite their assertions to the contrary.

Therefore, contrary to Defendants' assertion, Plaintiff's prompt return to the EMBA program is *far from* "impossible" (Def. Memo. p. 25-26), and it would in fact be equitable and consistent with SOM Administration practices to allow Plaintiff to rejoin his classes.

### E. Defendants' Additional Inaccuracies And Misrepresentations.

There are numerous points in the SOM Administration's forty (40) page brief (276 pages including Exhibits), that are notable or riddled with inaccuracies, including, but not limited to, the following:

1. Defendants claim that Plaintiff's exam was properly flagged by a teaching assistant, but note that his exam was not the highest scoring, and that there were others of similar length. (Def. Memo. p. 5) (his was "one of the highest scoring" exams and "almost all others were under 20" pages).

2. Defendants claim that Plaintiff will not face irreparable harm by not returning to his EMBA program, because he is an accomplished and educated professional, yet targeted and persecuted him for his "near perfect punctuation and grammar and elaborate formatting". (Def. Memo. p. 5).

3. Defendants acknowledge that the Honor Committee chose not to use the unreliable GPTZero scans against him, and then attempted to come up with post hoc evidence that was not referenced in either decision against him. (Def. Memo. p. 6, 13).

4. Defendants contend that Defendants Tsung and Scully did not attempt to coerce Plaintiff to falsely confess to cheating using AI, yet fail to sufficiently explain the threats made against him, including the incorrect threat that he could be deported if he didn't confess. (Def. Memo. p. 7). Defendants also argue with no support that Defendant Choi did not attempt to coerce Plaintiff to falsely confess to cheating by threatening him with an "extraordinary violation" if he did not produce a file that did not exist. (Def. Memo. p. 8-9). They stated, "In Chair Choi's ten years on the Honor Committee, no student had even ignored requests for documents about a case", failing to inform the Court the key fact that what Defendant Choi requested was a document did not exist. (Def. Memo. p. 9).

5. Defendants selectively use the term "Electronic File" rather than the correct term "Microsoft Word file" in referring to the requests made for such file to Plaintiff prior to his

---

[12] At least three students have been granted permission to graduate this May and complete their coursework after graduation.

7

hearing. They produced no evidence that the Honor Committee made any request for a file that Plaintiff failed to produce, and in fact as soon as they requested the Pages file, Plaintiff swiftly produced it within forty (40) minutes. (Def. Memo. p. 7-10). It is simply false that Defendants "had been requesting" the Pages file "for months", when the truth is that they asked for a file that did not exist. (Def. Memo. p. 14).

6.  Defendants incorrectly assert that the SOM Administration were "doing exactly what [the AI] tools recommend", despite the fact that Yale considers that program to be unreliable, and they fail to acknowledge that GPTZero itself asks schools not to use the tool in disciplinary proceedings against students. (Def. Memo. p. 9; Pl. Memo. p. 28; Compl. ¶ 56-63).

7.  Defendants seek to penalize Plaintiff for a "delay" because he was represented by attorneys during the administrative disciplinary proceedings, including the appeals. (Def. Memo. p. 11, 24, n. 17). Plaintiff was entitled to defend himself against false accusations, and was obligated to fully exhaust his administrative remedies prior to filing a complaint in court. Plaintiff received the final post-appeal decision on December 12, 2024, and then his attorneys attempted to resolve this matter outside of court. When Defendants refused settlement requests and assigned outside counsel, Plaintiff swiftly filed a Complaint,[13] and only weeks thereafter filed the TRO/injunction motion.[14]

8.  Defendants criticize Plaintiff for making recusal requests beyond the "one day" deadline "after receiving" the notification from the Honor Committee, calling him "absurd" and claiming he "knows how to use a link", yet they fail to inform the Court that the link that they provided to Plaintiff went to a page that stated that the members had not yet been determined, undermining Plaintiff's right to challenge those selections. (Def. Memo. p. 12, 34; Compl. ¶ 41, 89-93).

9.  Defendants accuse the Plaintiff of failing to "inform the Honor Committee about any limitations on his availability for that day" after his scheduled hearing, yet fail to produce any proof to the Court that they demanded that Plaintiff be available on that day beyond the time scheduled for the hearing. Defendants also fail to accurately acknowledge that Plaintiff had permission from Defendant Tsung to leave campus and miss class after the hearing ended. (Def. Memo. p. 12-13; Compl. ¶ 109).

10.  Defendant Choi purports to have "discovered that Pages preserves a time-stamped history of edits" on the "hard drive", but does not state how or where he learned this information from, nor do Defendants provide any expert or other admissible evidence to support this contention. (Def. Memo. p. 14; Choi Affidavit ¶ 25). It does not appear that this is accurate, and Defendants provide no evidence to support this position, other than the opinion of someone with no basis therefore. It is also curious why the Honor Committee chose not to review Plaintiff's computer for any such record of edits, and decided instead to move forward with a determination

---

[13] As the Court can see from the the fifty-two (52) page Complaint and Defendants' 276 page submission in objection to this motion, this case is fact heavy.
[14] As counsel for Plaintiff's informed the Court at the recent court conference, despite him being out sick in January and hospitalized in February, the firm was still able to draft and file the Complaint by February 21, 2025.

8

that he was not forthcoming, although he agreed to come in the following week with reasonable notice.

11.     Defendant Choi's Affidavit should be disregarded because it contains post hoc rationalizations for the wrongful disciplinary decisions against Plaintiff. Her Affidavit purports to speak for the entire Honor Committee, and the reasoning and deliberations of that Committee. Defendant Choi is not authorized to provide admissible statements on behalf of other Committee members, and Plaintiff was entitled to have the reasoning, and actual conclusions made against him stated clearly in his decisions, so that he could have been afforded fair and reasonable appeal rights. (*See* Choi Affidavit; Def. Memo. p. 16).

12.     Defendants contend that his disciplinary matter was properly sent back to the Honor Committee for "further deliberations" on the vague accusation of violating the examination rules, because the "Bulletin" permitted it. (Def. Memo. p. 16-17). However, they fail to include the complete reference to the applicable language on page 70 of the Bulletin.[15] Plaintiff *may* request a meeting with the "academic dean" who shall grant him an "opportunity to meet", and *only if* Plaintiff "raise[s] any objections" regarding the disciplinary proceedings on "grounds of procedural irregularity or prejudice" "may" that dean investigate *such objection* and "remand the matter" in regards to that specific procedural irregularity or other prejudice brought forward by the Plaintiff. Def. Ex. C, Bulletin, p. 70 (emphasis added). To the contrary, Plaintiff specifically informed the dean that he *did not challenge* a procedural irregularity and *did not trigger* any remanding of the AI matter to the Committee.

### F. Plaintiff Has Met The Requirements For An Injunction.

Plaintiff fully sets forth its position and legal authority in support of its motion for an injunction in its Memorandum of Law. (*See* Pl. Memo.). Plaintiff has demonstrated that he is highly likely to succeed on the merits of this case, making a "clear showing" that he meets any heightened criteria of a mandatory injunction. *Cacchillo v. Insmed, Inc.*, 638 F. 3d 401, 406 (2d Cir. 2011); *See* Def. Memo. p. 21-22). Plaintiff has demonstrated a high likelihood that he will suffer irreparable harm without injunctive relief, that the balance of equities tips in his favor, and that the injunction is in the public interest. *Winter v. Nat'l Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiff has addressed above Defendant's assertion that he

---

[15] The cognizant academic dean will offer any student against whom an infraction or violation is found the **opportunity to meet** with the cognizant academic dean, as promptly as the dean's schedule may permit, **to raise any objections** to the proceedings on the grounds of procedural irregularity or prejudice. **If objection is raised,** the cognizant academic dean will investigate the objection and **may remand the matter** to the committee to correct the procedural irregularity or to re-deliberate after disqualifying the member or members found to be prejudiced. Def. Ex. C, Bulletin, p. 70 (emphasis added).

9

delayed in filing this motion. (Def. Memo. p. 20-21, 23-25). The case law cited by Defendants generally refers to time periods greater than in this case, and during much of the pendency of Plaintiff's legal representation, he was exhausting his administrative remedies, and attempted to resolve this matter without court action.

Defendants argue that they are entitled to "educational deference" regarding their disciplinary decisions against Plaintiff, which should "preclude" Plaintiff's right to defend himself in court against their false determinations against him. (Def. Memo. p. 32-33). However, this case is not about "minor technical violations" referenced by Defendants. *Doe v. Brown Univ.*, 210 F. Supp. 3d 310, 331 (D.R.I. 2016). Gross procedural violations exist, including the failure to inform Plaintiff of the charges against him, failure to provide reasoning and conclusions in their decisions, and mishandling of his entire administrative process.[16]

It is well established that Plaintiff *did not cheat* on his examination, *did not obstruct* the investigation, and *did not unreasonably delay* in filing his motion for an injunction after the filing of his Complaint in this action.

## CONCLUSION

For the foregoing reasons, the Court should grant a preliminary injunction against the SOM Administration pending the adjudication of the merits of the Complaint.

---

[16] Those arguments are well outlined in Plaintiff's Complaint and Memorandum of Law supporting the instant motion, despite Defendants' attempt to avoid addressing them.

|  |  |
|---|---|
| Dated: March 24, 2025<br>New York, New York | Respectfully submitted,<br><br>**NESENOFF & MILTENBERG, LLP**<br><br>*/s/ Christine D. Brown*<br>**Christine D. Brown, Esq.**<br>Stuart Bernstein, Esq.<br>(admitted *pro hac vice*)<br>Andrew T. Miltenberg, Esq.<br>(admitted *pro hac vice*)<br>Kimberly S. Courtney, Esq.<br>(admitted *pro hac vice*)<br>363 Seventh Avenue, 5th Floor<br>New York, New York 10001<br>212-736-4500 (telephone)<br>cbrown@nmllplaw.com<br>sbernstein@nmllplaw.com<br>amiltenberg@nmllplaw.com<br>kcourtney@nmllplaw.com<br>***Attorneys for Plaintiff*** |

11