## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| THIERRY RIGNOL, | : | CASE NO. 3:25-cv-00159-SFR |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | SEPTEMBER 10, 2025 |
| | : | |

## <u>REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS</u>

The Defendants submit this Reply in Further Support of Their Motion to Dismiss (ECF 106 ("Motion")). Plaintiff's Opposition (ECF 107 ("Opp.")) relies on conclusory assertions that are refuted by Plaintiff's own allegations. Plaintiff cannot evade dismissal by contradicting or ignoring his own allegations and the documents integral to the Complaint. The claims also fail for reasons that Plaintiff fails to address.

## I.    THE WELL-PLEADED AND OTHERWISE ESTABLISHED FACTS

Plaintiff's Opposition rests on conclusory assertions refuted by his own allegations and documents integral to and referenced in his Complaint. Among other things,

- **The Conclusion That Plaintiff Used AI:** The University concluded that Plaintiff cheated by using AI. (Cmplt. ¶ 125; Ex. H.[1]) Plaintiff's Complaint is replete with allegations that he was accused of violating exam rules by using AI. Dean Tsung's September 8, 2024 email explained that Plaintiff was accused of violating exam rules by using AI: "[A]n issue of a possible Honor Code violation has come up . . . . The allegation is you improperly utilized AI on the final exam[.]" (Ex. C; Cmplt. ¶ 77, ¶ 58.) There is not a single well-pleaded fact to support Plaintiff's conclusory assertion that violation of exam rules was a new "charge" that related to something other than AI use and that he was thus not found to have cheated using AI. The indisputable facts refute Plaintiff's implausible assertion.

---

[1] Plaintiff concedes the Court may consider, *inter alia*, "any documents explicitly incorporated by reference." (Opp. 4.) References need not be explicit and the Court can also consider documents integral to the complaint. (Memo 3 n.1 & caselaw cited there.) All the documents the University references are integral and/or referenced: Ex. A: *E.g.*, Cmplt ¶¶ 24, 112, 135, 157; Ex. B: *E.g.*, Cmplt ¶¶ 69–72; Ex. C: *E.g.*, Cmplt. ¶¶ 77, 85, 86, 88 89; Ex. D: *E.g.*, Cmplt. ¶¶ 81, 198, 206; Ex. E: *E.g.*, Cmplt. ¶¶ 95, 139, 157, 165, 205; Ex. F: *E.g.*, Cmplt. ¶¶ 115, 116, 121, 133; Ex. G: *E.g.*, Cmplt. ¶ 60 & n.22; Ex. H: *E.g.*, Cmplt. ¶¶ 104, 106, 124, 125, 126; Ex. I: *E.g.*, Cmplt. ¶¶ 272, 286.

- **Plaintiff Not Being Forthcoming:**  On August 10, 2024 and August 16, 2024, Professor Choi notified Plaintiff that not producing requested documents would likely be deemed not being forthcoming and result in a severe penalty.  (Cmplt. ¶¶ 69, 72; Ex. B.)  Plaintiff admits he did not produce the documents until after his November 8, 2024 meeting— defending his decision not to do so on the basis that Professor Choi asked for Word files but he used Apple.  (Cmplt. ¶ 98.)  Plaintiff had ample notice and an opportunity to defend himself.  The Committee made a well-founded conclusion that Plaintiff was not forthcoming by playing games, based on a distinction between Word and Pages.

- **Production Of Evidence:**  Plaintiff alleges that the University gave him the "documents that the [] Committee intended to use as evidence against him" weeks before his meeting.  (Cmplt. ¶ 86.)  That was all Plaintiff was entitled to.  (Bulletin 68.)  Plaintiff agrees that the plain meaning of the Bulletin's relevant provision ("provided to the [C]ommittee") only requires production of documents given to "each *and every* member of the Committee" (Opp. 9 (emphasis added))—not documents an "investigator" who also happens to be on the Committee allegedly saw but that are not being used by the Committee.  Plaintiff does not allege the Committee had the documents in question.  (Cmplt.)  The allegedly withheld documents are inculpatory in any event (Ex. E)—Plaintiff was not accused of using AI to write every word on the exam and a report suggesting he wrote a portion of the exam without using AI did not exculpate him.  (*E.g.*, Cmplt. ¶ 42 ("[s]ome answers"), ¶ 94.)

- **Plaintiff's Recusal Requests:**  Plaintiff alleges Dean Tsung gave him a link to the website where the list of Committee members would soon be published.  (Cmplt. ¶ 79; Ex. C.)  Dean Tsung did so a month before the meeting.  (Ex. C.)  Professor Choi resent the link to Plaintiff, reminded Plaintiff he could seek recusals, and extended any deadline for Plaintiff to do so.  (Ex. D.)  Most importantly:  Plaintiff sought recusals.  (Ex. D.)  Plaintiff's argument to the contrary amounts to an assertion that the University should have literally sent him the list instead of the link to the list.  (Cmplt. ¶ 82.)  Plaintiff's allegations that he "was stripped of his right to challenge the composition of the Committee under SOM rules" is conclusory and refuted by Plaintiff's allegations and integral documents.[2]  (Cmplt. ¶ 82.)  Regardless, the Bulletin reserves recusal decisions to the University and Plaintiff has not alleged any well-pleaded facts that Committee members were in fact "conflicted."

- **The Sanctions:**  Plaintiff's punishment was light according to his own allegations.  (*E.g.*, Cmplt. ¶ 69 ("the most common punishment is permanent expulsion"), ¶ 72, ¶ 66.)  The punishment was certainly not arbitrary when Plaintiff admits he did not produce documents the Committee requested until after his meeting.  (*E.g.*, Cmplt. ¶¶ 69, 72, 98; Ex. B.)  Plaintiff's assertions that he *argued* in his appeal that his suspension was harsh are not well-pleaded factual allegations and this argument conflicts with Plaintiff's allegations that not being forthcoming regularly resulted in harsh punishment.  (Cmplt. ¶¶ 69, 114.)

---

[2] This is an excellent example of why Courts only accept *well-pleaded* allegations, analyze documents integral to and referenced in complaints, and reject conclusory and implausible allegations.  Plaintiff, an experienced professional and post-graduate student, is making a federal case out of the University sending him a link to a list instead of the list.  Plaintiff's arguments in the Opposition are baseless and conclusory, and undermined by the indisputable facts, including Plaintiff's own emails.

Plaintiff fails to plead *facts* that would make his claims plausible, such as allegations that another student did exactly what he did but was given no suspension.

These central arguments are not supported by well-plead facts. Instead, the arguments are simply made-up or contradicted by actual allegations or documents integral to the Complaint.

## II.    PLAINTIFF'S BREACH OF CONTRACT AND COVENANT CLAIMS FAIL

*First*, Plaintiff concedes that the Bulletin's procedures are customary and allow for deviations; (Bulletin 67; Opp. 13–14.); but he is asking the Court to rewrite that provision to say that deviations are only allowed in "exigent circumstance[s]." (Opp. 14.) But that is not a requirement. The provision allows for deviations in any circumstance. That dooms Plaintiff's claims, as this Court has observed. (*E.g.*, ECF 82 30:6–11.) For example, even if the provision providing that "materials being provided to the [C]ommittee" are given to the student meant any document anyone had must be given to the student, which it does not, the University could decide not to produce certain documents because they were irrelevant, cumulative, etc. based on the Bulletin's deviation provision. Even if the Bulletin mandated that not being forthcoming be a stand-alone formal charge, which it does not, the University could have decided to deviate.

*Second*, *Gupta* applies to this case and precludes Plaintiff's claims because they fail to satisfy *Gupta*'s narrow exceptions.[3] There were discernable bases for the University's decisions

---

[3] *Doe v. Wesleyan Univ.*, No. 3:19-CV-01519 (JBA), 2022 WL 2656787 at *6 (D. Conn. July 8, 2022), applied *Gupta* to a cheating case like this case. *Gupta* itself cites *Holert v. Univ. of Chi.*, 751 F. Supp. 1294 (N.D. Ill. 1990), a disciplinary case involving a student expelled for harassing other students by making threats, etc., for the proposition that a student must establish that a school's "decision had no 'discernable rational basis.'" *Gupta*, 239 Conn. at 596 (quoting *Holert*, 751 F. Supp. at 1301). *Gupta* also cited *Lekutis v. Univ. of Osteopathic Med. and Health Scis.*, 524 N.W.2d 410, 410–13 (Iowa 1994), a case involving a dismissal that stemmed "from gross lack of interpersonal skills" that included "unwelcome amorous advances" on "female student doctors" by a student who was "exceptionally intelligent" and "near the top of his class academically." In *Jacobs v. Ethel Walker Sch. Inc.*, No. CV-02-0515279-S, 2003 WL 22390051, at *4 (Conn. Super. Ct. Sept. 30, 2003), then Superior Court Judge and later Chief Justice of our Supreme Court, the Honorable Richard A. Robinson explained: "This court notes that issues raised by the parties in this matter directly concern the disciplinary aspect of the educational process instead of the academic aspect of the process, however when it comes to judicial intervention this is a distinction without a difference." The issue is now well settled. *See*, e.g., *Mara v. MacNamara*, No. 3:14-CV-01095 RNC, 2015 WL 4392956, at *10 (D. Conn. July 15, 2015); *Bass v. Miss Porter's School*, 738 F. Supp. 2d 307 (D. Conn. 2010); *Stockstill v. Quinnipiac Univ.*, No. 3:10-cv-265 (VLB), 2010 WL 2011152 (D. Conn. May 19, 2010); *Demoulas v. Quinnipiac Univ.*, No. CV-155006283-S,

and/or Plaintiff has not identified breaches of *specific* provisions (which Plaintiff cannot establish because the provisions are subject to change).  It was not arbitrary for the University to sanction Plaintiff for not being forthcoming—that was a rational response to Plaintiff's failure to produce requested documents.  Nor was it arbitrary to allegedly not produce to the Committee and Plaintiff certain documents—it was rational to focus the Committee on the questions that showed AI use given that Plaintiff was not accused of using AI to write every word on the exam.

*Third*, and regardless of whether *Gupta* applies, what Plaintiff complains of is not a breach of the Bulletin.  The Bulletin does not say, for example, that not being forthcoming must be formally "charged" as a separate offense (it says the student will be informed, which Plaintiff was).

*Fourth*, the University's process was more than fair.  A Teaching Assistant ("TA") suspected Plaintiff cheated and Plaintiff's Professors agreed based on multiple indicators of AI use.  (Cmplt. ¶ 42.)  Plaintiff was repeatedly informed of the allegations against him, including the fact that not being forthcoming would result in a severe sanction.  (*E.g.*, Cmplt. ¶¶ 58, 63, 69, 72.)  He was given an opportunity to defend his actions—including his failure to turn over documents— and did so, including on an incredible basis (that the Committee asked for Word files but "that he had not used Microsoft Word but Apple Pages" to write the exam).  (Cmplt. ¶ 98.)  He was punished for not being forthcoming and for using AI.  (Cmplt. ¶¶ 104, 125.)  He appealed both decisions.  (Cmplt. ¶¶ 113, 131.)  Plaintiff had many other protections, such as his recusal requests.

---

2015 WL 1427951, at * 3–*4 (Conn. Super. Ct. Mar. 5, 2015); *Lotto v. Hamden Bd. of Educ.*, No. CV-05-4010436, 2006 WL 618361, at *4 (Conn. Super. Ct. Feb. 21, 2006); *see also Packer v. Bd. of Educ. of Thomaston*, 246 Conn. 89, 126, 717 A.2d 117, 137 (1998) (Norcott, *J.*, concurring) ("It is a well established principle that courts should exercise caution in interfering with school discipline."); ECF 82 (referencing *Gupta*, 239 Conn. at 574) at 15:13–22, 26:7–9 ("I have to find that it was arbitrary and capricious and supported by essentially no rational basis.").  Plaintiff's Opposition acknowledges that "universities retain broad discretion in disciplinary matters," citing cases.  (Opp. 10.) Against this authority, Plaintiff's Opposition largely cites to cases from other jurisdictions that have no bearing on Connecticut law.  The sole exception is a single Connecticut Superior Court case that is incorrect according to numerous decisions of this Court, a decision from the future Chief Justice of the Connecticut Supreme Court, etc. *Gupta* also applies to all of Plaintiff's claims, not just breach of contract, as noted in the University's Motion.

*Fifth*, cognizable damages are an element of Plaintiff's claim, but Plaintiff has failed to plausibly tie his gripes to such damages. It is not plausible that allegedly withheld evidence of AI use played any role in the Committee's decision that Plaintiff was not forthcoming, for example.

## III.    PLAINTIFF'S TITLE VI DISCRIMINATION CLAIM FAILS

The only assertions Plaintiff cites to support putative discrimination are that: (1) Plaintiff's exam was the only exam singled out for scrutiny; (2) Dean Scully, who had no other role in the proceedings, allegedly threatened him with deportation; and (3) the University allegedly violated procedural provisions and engaged in "irregularities." (Opp. 16–19.)

Plaintiff's assertions are insufficient to state a plausible discrimination claim. Plaintiff acknowledges his exam was suspicious for numerous reasons that had nothing to do with the fact that he is French. (Cmplt. ¶ 42.) Plaintiff's attempt to tie those reasons to his national origin are baseless. His assertion that "[t]he initial suspicions, such as 'near perfect punctuation and grammar and elaborate formatting,' directly correlate with Plaintiff's non-native English background" makes no sense and is implausible. (Opp. 18.) Near perfect punctuation and grammar is not a byproduct of writing by non-native English speakers. If anything, grammar, etc. are more difficult when writing in a foreign language. There is not a single well-pleaded fact that plausibly alleges discriminatory animus by the TA, Professors, or anyone else. Dean Scully's alleged comment is not sufficient as a matter of law. *E.g.*, *Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F. Supp. 3d 338, 347 (S.D.N.Y. 2014) ("A single comment—even if offensive—is not sufficient to uphold a Title VI claim on its own."). In any event, Dean Scully had no role in the proceedings other than meeting with Plaintiff. (*E.g.*, Cmplt. ¶ 60; Cmplt.) Her alleged comment is not anti-French animus in any event. Plaintiff has not alleged a single anti-French statement. (Cmplt.) Plaintiff's allegations of procedural violations and "irregularities" are baseless, as previously discussed.

Plaintiff's claim is particularly implausible because his claim of discrimination must be considered in light of the allegations that the University took the actions it did for non-discriminatory reasons.  (Motion 20 (citing *Gabriel*).)  Plaintiff alleges no well-pleaded facts supporting discrimination.  He alleges a litany of facts establishing that the University reasonably suspected that Plaintiff cheated and then concluded that he did and was not forthcoming.  (*E.g.*, Cmplt. ¶¶ 42 (numerous bases for suspicions), 69, 72 (requests for documents), 98.)

Plaintiff's deliberate indifference theory fails for much of the same reasons and others.  The standard for deliberate indifference is very high and requires, among other things, national origin "harassment [that is] severe, pervasive, and objectively offensive." *Roggenbach*, 7 F. Supp. 3d at 348.  Plaintiff has not come close to meeting that standard.  *E.g. id.*  Plaintiff's argument hinges on the assertion that the University was deliberately indifferent because it purportedly used AI detection tools despite an allegedly "foreseeable and substantial risk of discrimination against non-native English speakers" by the software.  (Opp. 18.)  Plaintiff seeks to create a deliberate indifference case every time a school uses AI detection software.  The use of such tools is grossly insufficient to meet the high standard for deliberate indifference.

## IV.    PLAINTIFF'S TITLE VI RETALIATION CLAIM FAILS

Plaintiff misunderstands what constitutes protected activity.  He cites a litany of alleged events that he claims occurred before his November 3, 2024 email, but none of those events involved protected activity.  (Opp. 20–23.)  For example, Plaintiff *now* claims that the initial scrutiny of his exam and the use of AI detection tools were discriminatory acts.  (Opp. 21.)  But notably absent from Plaintiff's assertions are any well-pleaded facts that Plaintiff complained that those events, including Dean Scully's purported statements, were discriminatory *when they*

6

*occurred* or at any point before November 3, 2024.  (Cmplt.)  Any retaliation claim based on events before November 3, 2024 thus fails for failure to properly allege protected activity.

Plaintiff's claims about events after his November 3, 2024 email also fail.  Plaintiff's only potential protected activity is his November 3, 2024 email to Dean Tsung and Professor Choi.  (Ex. D.)  Plaintiff does not allege any facts, never mind well-pleaded facts, that anyone else, including the nine (9) members of the Committee other than Professor Choi or Dean Jain, were aware of his email.  (Cmplt.)  Particularly absent such an allegation, it is implausible that the Committee, FRB, or Dean Jain did what they did because of retaliation.  That is particularly true in light of the indisputable facts supporting the conclusion that Plaintiff was not forthcoming (by his own admission, he was asked for documents and did not provide them for months, until after his meeting with the Committee (Cmplt. ¶¶ 69, 72, 98)) and that he cheated (Cmplt. ¶ 42).

## V.    PLAINTIFF'S INTENTIONAL INFLICTION CLAIM FAILS

Plaintiff's assertion that the University's alleged actions were extreme and outrageous is based on his conclusory characterizations that are disproven by his own allegations and documents he relies on.  As previously discussed, for example, the facts establish that the University did not "fabricat[e] [a] 'not being forthcoming' charge"—Plaintiff was given ample notice that he would likely be severely punished for not being forthcoming if he failed to produce documents.  (Cmplt. ¶¶ 69, 72.)  Plaintiff failed to produce the documents.  (Cmplt. ¶ 98)  This is not extreme or outrageous.  To the contrary, it is a very ordinary and expected result.

That is particularly true because Plaintiff acknowledges that context is critical.  (Opp. 25–26.)  It is not extreme and outrageous for a university to expect students to be forthcoming.  Nor is it extreme and outrageous for a dean to discuss with a student all of the potential consequences of disciplinary proceedings—including possible immigration consequences.  (Again, Plaintiff's

allegations about what Dean Scully's intent in allegedly raising immigration consequences are not well-pleaded facts—they are characterizations the Court need not and should not accept.)

When Plaintiff's sensational but unsupported assertions are removed and Plaintiff's Complaint is reviewed based on its well-pleaded facts and with the documents integral to it, nothing comes close to meeting the extraordinary standard for an IIED claim.

## VI.    PLAINTIFF'S NIED CLAIM FAILS

Plaintiff's defense of his NIED claim amounts to a summary assertion that he has stated an NIED claim without a single citation to even his Complaint. (Opp. 26–27.) Plaintiff's argument is based on the same assertions about things like the supposed "fabrication of charges" his own factual allegations refute. Plaintiff ignores the binding Second Circuit authority precluding this claim because Plaintiff's theory is that the University's actions were *intentional*. (Motion 28.) Plaintiff similarly ignores and does not respond to the University's other arguments. (Motion 29.)

## VII.    PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM FAILS

Plaintiff's promissory estoppel arguments similarly amount to conclusory assertions without citation that are based on assertions refuted by Plaintiff's own Complaint and that do not address the University's dispositive arguments. (Opp. 27; Motion 30–31.) Plaintiff is improperly attempting to use this claim to rewrite the Bulletin, including its provision allowing for deviations, by claiming the Bulletin contains clear and unambiguous promises the University could not deviate from even though it says the opposite. (Opp. 27.) The Poorvu Center Policy does *not* clearly and unambiguously say that no one at the University will ever use AI detection tools—it explains why Yale disabled a certain AI detection tool in its Canvas platform. (Cmplt. ¶ 47 & n.15.) Any reliance on that policy (or any policy) to cheat was not reasonable, and there is no injustice here.

## VIII.  PLAINTIFF'S CUTPA CLAIM FAILS

Plaintiff ignores the fact that CUTPA claims against schools cannot proceed where, as here, the claim challenges disciplinary matters.  *Wesleyan*, 2021 WL 664010, at *14; *see also* Opp. 5 ("Plaintiff's [] claims [] challenge [] Defendants' disciplinary procedures . . . ."). Plaintiff's CUTPA claim fails under this and other caselaw, which Plaintiff offers no response to.

## IX.  PLAINTIFF'S DEFAMATION CLAIMS FAIL

Plaintiff's defamation claims are based on the faulty premise that Plaintiff was never found to have cheated using AI.  (Opp. 28–31.)  That premise is false because the well-pleaded facts establish that the University found that Plaintiff used AI.  Plaintiff's claims fail as a result:  It is not defamatory to allegedly say Plaintiff was found to have used AI when Plaintiff was found to have used AI.  Similarly, it is not defamatory to allegedly "disclose[] confidential information regarding the deliberations and proceedings against Plaintiff."  (Opp. 29.)  Plaintiff does *not* argue that what was allegedly disclosed was false, only that purportedly making a disclosure allegedly "contravenes Yale's [] policies."  (Opp. 29.)  That is incorrect.  Regardless, falsity is required to state a defamation claim—a purported policy violation is not sufficient.  (*E.g.*, Motion 33, 34.)

Plaintiff has also alleged nothing more than protected opinion.  When Plaintiff's conclusory assertions are stripped away and the Court focuses on his well-pleaded facts, those facts show that the University suspected he cheated and was not forthcoming, analyzed those issues, and reached the opinion that Plaintiff cheated and was not forthcoming.  (*E.g.*, Motion 34 (calling someone a "white supremacist" constitutes protected opinion).)  Plaintiff offers no response.

Nor does Plaintiff address the numerous cases the University cites establishing that Plaintiff's claims are not sufficiently specific.  (Motion at 33–34 & n.14.)  Plaintiff offers no contravening caselaw and instead summarily asserts what he has alleged is sufficient.  It is nowhere

near sufficient.  The articles Plaintiff invokes cite his own allegations in this case—they contain no even arguably defamatory statements from the University.  (Ex. I.)  Plaintiff offers no legal basis for holding the University liable.  Plaintiff effectively concedes that Dean Tsung's statements in her affidavit are inactionable.  (Opp. 30.)  These examples illustrate why specificity is required and that it is lacking.  Plaintiff cannot just declare "I've been defamed" without pointing to specific statements that were made by the University in circumstances that give rise to a defamation claim.

## X.    PLAINTIFF'S FALSE LIGHT CLAIM FAILS

Plaintiff's false light claim is also based on false assertions.  Plaintiff argues it was highly offensive, for example, for unidentified individuals to allegedly portray him as not being forthcoming and having used AI.  (Opp. 32.)  But that is exactly what Plaintiff was found to have done.  (*E.g.*, Cmplt. ¶¶ 77, 125, Ex. C, Ex. H.)  It is therefore not highly offensive, etc.

## XI.    PLAINTIFF'S CLAIMS FOR DECLARATORY RELIEF FAIL

There is no clearer request for a Court to improperly second guess the decisions of an academic institution that the law requires it to defer to than Plaintiff's request that the Court Order the University to change his grade, "expunge his disciplinary record, remove [his] suspension/F from his academic record," etc.  (Opp. 34.)  This is exactly what *Gupta* and its progeny and analogous federal law (including *Davis*) prohibit.  Plaintiff is asking this Court to exercise its discretionary authority to create legal rights precluded by established law.[4]

## XII.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE

Plaintiff seeks to evade dismissal by creating a fiction that is refuted by his own well-pleaded factual allegations and the documents integral to his claims.  This is the exact situation

---

[4] Plaintiff does not dispute that "Yale University Board of Trustees" is not a legal entity.  The Court should thus dismiss it.  The Court should also dismiss the Individual Defendants.  Plaintiff offers no response to their arguments.

Rule 12(b)(6) and the Supreme Court's rules requiring well-pleaded facts and plausibility were meant for. The Court should reject Plaintiff's fiction and dismiss his Complaint with prejudice.

THE DEFENDANTS,
YALE UNIVERSITY, YALE
UNIVERSITY BOARD OF TRUSTEES,
WENDY TSUNG, K. GEERT
ROUWENHORST, JACOB
THOMAS, SHERILYN SCULLY,
JAMES CHOI, AND ANJANI JAIN

By: */s/ Brendan N. Gooley*
    James M. Sconzo (ct04571)
    Brendan N. Gooley (ct30584)
    CARLTON FIELDS, P.C.
    One State Street, Suite 1800
    Hartford, CT  06103-3102
    Telephone:(860) 392-5000
    Facsimile:  (860) 392-5058
    E-mail:    jsconzo@carltonfields.com
            bgooley@carltonfields.com

    Their Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 10th day of September, 2025, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


*/s/ Brendan N. Gooley*
Brendan N. Gooley