**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **THIERRY RIGNOL,** | |
| *Plaintiff,* | **Civil Action No. 3:25-CV-00159-SFR** |
| **v.** | |
| **YALE UNIVERSITY, YALE UNIVERSITY BOARD OF TRUSTEES, WENDY TSUNG in her individual and official capacity, K. GEERT ROUWENHORST in his individual and official capacity, JACOB THOMAS in his individual and official capacity, SHERILYN SCULLY in her individual and official capacity, JAMES CHOI in his individual and official capacity, and ANJANI JAIN in his individual and official capacity,** | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO STAY DISCOVERY**

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff Thierry Rignol*

Stuart Bernstein, Esq.
Andrew T. Miltenberg, Esq.
Kimberly S. Courtney, Esq.

363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
sbernstein@nmllplaw.com
amiltenberg@nmllplaw.com
kcourtney@nmllplaw.com

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   LEGAL STANDARD............................................................................................ 2

III.  ARGUMENT ...................................................................................................... 3

   A.   Defendants' Motion to Dismiss Lacks Substantial Grounds, Demonstrating Plaintiff's Likelihood of Success on the Merits.......................................................................... 3

     1.    The Gupta Standard Does Not Apply to Disciplinary Claims ......................................... 3

     2.    Even if *Gupta* Applies, Legal Claims Include Arbitrary and Bad-Faith Conduct.......... 5

     3.    Fundamental Fairness Is an Independent Standard........................................................ 7

     4.    Plaintiff's Claims for Breach of Contract (Count I) and Implied Covenant (Count II) Are Well-Pled ........................................................................................................................... 8

     5.    Plaintiff's Title VI Claims (Counts III & IV) Meet the Plausibility Standard................ 9

     6.    Plaintiff's Tort Claims (Counts V, VI, XII, XIII) Are Adequately Pleaded................. 10

     7.    Plaintiff's Promissory Estoppel (Count VII) and CUTPA (Count VIII) Claims are Well Pled 12

     8.    Declaratory Relief (Count IX) is Warranted and Opposition to Dismissal of Yale University Board of Trustees ........................................................................................... 12

   B.   Discovery Is Necessary and Fact-Intensive ............................................................. 13

   C.   Plaintiff Will Suffer Severe Prejudice from Delay ................................................... 15

   D.   Defendants Face Only Routine Litigation Burdens ................................................... 16

   E.   Judicial Economy Favors Denial ............................................................................. 16

IV.   CONCLUSION.................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Anderson News, LLC v. Am. Media, Inc.*,
   680 F.3d (2d Cir. 2012)..................................................................................... 3, 9

*Ashcroft v. Iqbal*,
   556 U.S. (2009)..................................................................................................... 3

*Bass v. Miss Porter's Sch.*,
   738 F. Supp. 2d (D. Conn. 2010)........................................................................ 4

*Bd. of Curators of Univ. of Mo. v. Horowitz*,
   435 U.S. (1978 ................................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. (2007)..................................................................................................... 3

*Cloud v. Trs. of Bos. Univ.*,
   720 F.2d (1st Cir. 1983) ..................................................................................... 7

*Doe v. Brandeis Univ.*,
   177 F. Supp. 3d (D. Mass. 2016) ............................................................. 5, 6, 16

*Doe v. Columbia Univ.*,
   831 F.3d (2d Cir. 2016)....................................................................................... 3

*Doe v. Indian Mountain Sch.*,
   No. 3:20-cv-1646 (VAB), 2021 WL 4443065 (D. Conn. Sept. 28, 2021) ...... passim

*Doe v. Quinnipiac Univ.*,
   404 F. Supp. 3d (D. Conn. 2019)................................................................. passim

*Doe v. Trs. of Bos. Coll.*,
   942 F.3d (1st Cir. 2019)...................................................................................... 7

*Fellheimer v. Middlebury Coll.*,
   869 F. Supp. (D. Vt. 1994)................................................................................. 6

*Goss v. Lopez*,
   419 U.S. (1975)................................................................................................... 4

*Greenhouse v. Yale Univ.*,
   No. 3:05CV1429 (AHN), 2006 WL 473724 (D. Conn. Feb. 28, 2006.................. 11

*Guerrero v. Target Corp.*,
   No. 3:18-cv-1972, 2020 WL 4597313 (D. Conn. Aug. 11, 2020)............ 2, 13, 15, 17

*Gupta v. New Britain General Hospital*,
   239 Conn. A.2d 111 (1996) ......................................................................... passim

*Hachette Distrib., Inc. v. Hudson Cty. News Co.*,
   136 F.R.D. (E.D.N.Y. 1991)............................................................................. 17

*Johnson v. N.Y. Univ. Sch. of Educ.*,
   205 F.R.D. (S.D.N.Y. 2002)......................................................................... 2, 16

*Madej v. Yale Univ.*,
   No. 3:20-CV-133 (JCH), 2020 WL 1614230 (D. Conn. Mar. 31, 2020) ............... 4

*McNeil v. Yale Univ.*,
   436 F. Supp. 3d (D. Conn. 2020)....................................................... 4, 6, 7, 13

*Moran v. Flaherty*,
   No. 92 Civ. 3200, 1992 WL 276913 (S.D.N.Y. Sept. 25, 1992)........................... 2

*Pacella v. Tufts Univ. Sch. of Dental Med.*,
    66 F. Supp. 2d (D. Mass. 1999) ............................................................................. 11
*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*,
    206 F.R.D. (S.D.N.Y. 2002) ..................................................................... 1, 16, 17
*Steuben Foods, Inc. v. Country Gourmet Foods, LLC*,
    No. 08-CV-561, 2009 WL 3191464 (W.D.N.Y. Sept. 30, 2009) ............................ 13

## I.    PRELIMINARY STATEMENT

Defendants (collectively "Defendants", "SOM Administration", or "Yale") ask this Court to halt all discovery pending resolution of their Motion to Dismiss. Such stays are extraordinary remedies disfavored absent a strong showing that the dispositive motion is likely to dispose of the case. *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (applying the uniform standard for discretionary stays in the Second Circuit). The SOM Administration cannot meet this high burden.

First, the Motion to Dismiss is not "substantially grounded," failing to overcome the low bar of plausibility set by Rule 12(b)(6). Plaintiff's Second Amended Complaint ("SAC") provides detailed, plausible claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of Title VI, and torts including defamation, false light, and emotional distress. These claims are supported by precedent in this District and elsewhere. The Connecticut Supreme Court's decision in *Gupta v. New Britain General Hospital*, 239 Conn. 574, 687 A.2d 111 (1996), does not bar disciplinary claims, and even if it did, Plaintiff's Second Amended Complaint includes conduct that is arbitrary, capricious, and in bad faith. Courts in this District have repeatedly allowed similar claims to proceed past the pleading stage.

Second, Plaintiff's claims are inherently fact-intensive. The central questions—whether the SOM Administration fabricated charges, withheld exculpatory evidence, seated biased decisionmakers, imposed inconsistent sanctions, or discriminated against Plaintiff as a non-native English speaker—can only be answered through discovery. Defendants' reliance on *Gupta* and "alternative explanations" does not eliminate the need for a factual record. Fact-intensive disputes are precisely why discovery must proceed.

Third, the prejudice to Plaintiff from delay is severe. A stay would prolong his wrongful suspension record[1], extend stigma on his transcript, continue to harm his career prospects, and risk the fading of witness recollections. These harms are concrete and irreparable.

Finally, the SOM Administration face only the ordinary burdens of litigation. Their complaints about the cost of discovery ring hollow, especially given that they themselves sought expedited discovery earlier in this case. The Federal Rules provide ample tools to narrow discovery if needed, but not to halt it altogether. For all these reasons, the governing factors weigh overwhelmingly against a stay.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) authorizes a stay of discovery only upon a showing of good cause. The moving party bears the burden of demonstrating specific and substantial reasons for delay. *Guerrero v. Target Corp.*, No. 3:18-cv-1972, 2020 WL 4597313, at *2 (D. Conn. Aug. 11, 2020). To determine whether good cause exists, courts in the District of Connecticut apply the standard recognized throughout the Second Circuit, considering four factors: (1) the strength of the dispositive motion; (2) the breadth and burden of discovery; (3) prejudice to the non-moving party; and (4) judicial economy. See *Johnson v. N.Y. Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002) (listing factors used in this Circuit). A stay is an extraordinary remedy and is not warranted unless the dispositive motion is strong and likely to dispose of the case. *Moran v. Flaherty*, No. 92 Civ. 3200, 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992).

---

[1] Although Plaintiff has now returned to the program, the harm of having this suspension on his academic record is still significant.

III.    **ARGUMENT**

    **A. Defendants' Motion to Dismiss Lacks Substantial Grounds, Demonstrating Plaintiff's Likelihood of Success on the Merits**

To establish a likelihood of success on the merits in opposing the motion to dismiss, Plaintiff need only demonstrate that the claims are plausible and supported by detailed factual allegations, accepting all well-pleaded facts as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); see also *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016) (on a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and draw all reasonable inferences in plaintiff's favor). Facial plausibility exists when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The judicial inquiry is not whether there exists a more plausible alternative to the plaintiff's theory, but rather whether there are sufficient factual allegations to make the plaintiff's claims plausible. *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). Plaintiff's Second Amended Complaint provides a comprehensive factual basis that far exceeds the required pleading standard for each cause of action.

    **1.  The Gupta Standard Does Not Apply to Disciplinary Claims**

Defendants' central argument—that *Gupta* forecloses all state-law claims—is legally unsound. Judicial review is limited in scope regarding academic evaluations of a student's performance. *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 591, 687 A.2d 111 (1996). It does not bar judicial review of disciplinary proceedings or contractual promises. *Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 664 (D. Conn. 2019); *Doe v. Indian Mountain Sch.*, No. 3:20-cv-1646 (VAB), 2021 WL 4443065, at *7 (D. Conn. Sept. 28, 2021).

*Gupta* expressly distinguished academic matters from enforceable contractual promises, holding that universities remain liable where they breach "specific contractual promise[s] distinct from any overall obligation to offer a reasonable program". *Gupta*, 239 Conn. at 593. Subsequent cases underscore this limitation, applying *Gupta* only to claims of "educational malpractice challenging the quality and value of the education received". *Bass v. Miss Porter's Sch.*, 738 F. Supp. 2d 307, 323 (D. Conn. 2010); *Madej v. Yale Univ.*, No. 3:20-CV-133 (JCH), 2020 WL 1614230, at \*10 (D. Conn. Mar. 31, 2020) (rejecting broad application of *Gupta* at motion-to-dismiss stage).

The U.S. Supreme Court draws a sharp line between academic judgments, which warrant deference, and disciplinary sanctions, which are "qualitatively different" and require more robust procedural protections. *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86 (1978); *Goss v. Lopez*, 419 U.S. 565, 574–75 (1975). Courts in this District recognize this distinction: breach of contract claims based on misconduct proceedings are cognizable. *Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 657–58 (D. Conn. 2019). Similarly, courts have enforced specific contractual promises concerning discipline. *McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 531 (D. Conn. 2020).

Most recently, in *Doe v. Indian Mountain School*, No. 3:24-cv-01402, September 30, 2025 (VAB) (D. Conn.), attached as Exhibit A, the U.S. District Court for the District of Connecticut (New Haven Division) denied dismissal of contract and tort claims arising from disciplinary proceedings. The court held that whether the school acted arbitrarily or in bad faith is "better addressed at summary judgment, following the completion of discovery, rather than now." (Exhibit A). This very recent decision—issued from the same courthouse and within the same District where this case is pending, and addressing closely analogous claims—confirms that such claims are not barred at the pleading stage and should proceed to discovery.

The Second Amended Complaint challenges misconduct adjudication, not academic grading. Plaintiff challenges Defendants' departures from its own Bulletin and contractual commitments, including:

- **Failure to Provide Timely Evidence**—denying timely access to evidence, including screenshots and internal reports.
- **Improper New Charge Without Notice**—inventing the charge of "not being forthcoming" mid-process.
- **Denial of Right to Challenge Biased Committee Members**—allowing conflicted members to remain despite objections.
- **Inconsistent and Arbitrary Sanctions**—where sanctions were arbitrarily escalated and inconsistent with prior outcomes.

These claims ask the Court to enforce specific contractual promises of procedural fairness, which is precisely the type of claim *Gupta* allows. *Gupta*, 239 Conn. at 593.

Extending *Gupta* here would improperly grant the SOM Administration absolute immunity from judicial review, a result courts have squarely rejected. See *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 602 (D. Mass. 2016) ("[I]t is not the role of the courts to second-guess the disciplinary decisions of universities, but neither may universities act with impunity in breach of their own policies or in disregard of basic fairness."). And most importantly, as *Indian Mountain* makes clear, this very court has just confirmed that such contract and tort claims are viable and must proceed to discovery. Defendants' sweeping interpretation of *Gupta* is not only inconsistent with Connecticut law, but also irreconcilable with this District's most recent authority.

## 2. Even if *Gupta* Applies, Legal Claims Include Arbitrary and Bad-Faith Conduct

Even under the deferential *Gupta* standard, universities remain liable when they act arbitrarily, capriciously, or in bad faith. *Gupta*, 239 Conn. at 592. Here, Plaintiff has pled detailed misconduct that fits squarely within this exception.

First, Yale fabricated charges. After failing to substantiate any allegation of AI misuse, the University abruptly invented a new charge of "not being forthcoming," levied without notice or an opportunity to be heard. Shifting allegations mid-process in this manner reflects arbitrariness and bad faith. See *Fellheimer v. Middlebury Coll.*, 869 F. Supp. 238, 246–47 (D. Vt. 1994) (holding that failure to notify a student of a separate charge rendered the process fundamentally unfair).

Second, Yale withheld evidence. More than ninety pages of materials—including exculpatory GPTZero reports—were concealed in direct violation of Yale's own Bulletin. The deliberate withholding of evidence contrary to the University's own governing rules is the essence of arbitrary and capricious conduct. See *McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 531 (D. Conn. 2020). Third, the disciplinary process was tainted by bias. Despite Plaintiff's objections, conflicted Committee members remained on the panel. The refusal to provide an impartial tribunal demonstrates bad faith. See *Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 657–58 (D. Conn. 2019).

Fourth, Yale imposed improper remands and sanctions. Dean Jain directed reconsideration of new charges and imposed a failing grade of "F," directly contradicting prior assurances. The escalation of sanctions in this arbitrary manner, inconsistent with prior outcomes, exemplifies bad faith. See *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 602 (D. Mass. 2016). Finally, Yale engaged in coercive discrimination. Dean Scully threatened Plaintiff with deportation, exploiting his status as a foreign national. (Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss ("MTD Opp.") at 9–13). Such conduct, weaponizing immigration status to intimidate a student, epitomizes arbitrary and bad-faith treatment.

Taken together, these allegations describe conduct that falls far outside the realm of protected academic judgment. Even under *Gupta*, they warrant judicial review.

### 3.   Fundamental Fairness Is an Independent Standard

Connecticut law independently imposes a duty of fundamental fairness in disciplinary proceedings, apart from any contractual promises or the limitations of *Gupta*. See *Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 657 (D. Conn. 2019) (holding that disciplinary procedures must be fundamentally fair and rejecting arguments to the contrary); *McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 531 (D. Conn. 2020). This duty ensures that students facing serious sanctions are afforded a process that is transparent, even-handed, and consistent with basic principles of justice.

Other courts across the country have reached the same conclusion. The First Circuit has long recognized that even in private university settings, disciplinary processes must be fundamentally fair. See *Cloud v. Trs. of Bos. Univ.*, 720 F.2d 721, 724–25 (1st Cir. 1983) (noting that while courts do not second-guess the merits of disciplinary judgments, they must ensure that the process itself is fundamentally fair); *Doe v. Trs. of Bos. Coll.,* 942 F.3d 527, 533 (1st Cir. 2019) (reaffirming that fundamental fairness is the governing standard in reviewing private university discipline).

Yale's process departed from this standard in nearly every respect. The charges against Plaintiff shifted mid-process, with the University fabricating a new allegation of "not being forthcoming" after its AI-misuse theory collapsed. Evidence, including over ninety pages of exculpatory GPTZero materials, was withheld in violation of Yale's own Bulletin. The tribunal was not impartial: conflicted Committee members remained despite Plaintiff's objections. Sanctions were imposed inconsistently and escalated arbitrarily, contradicting prior assurances and comparable outcomes. And finally, coercive threats—including warnings of deportation directed at a foreign national student—were used to pressure and intimidate Plaintiff.

Denial of notice, denial of timely access to evidence, denial of an impartial tribunal, and the imposition of inconsistent and discriminatory sanctions are not technical irregularities. They strike at the very core of fundamental fairness. Courts have consistently recognized that such allegations state actionable claims.

Accordingly, even if Defendants' expansive reading of *Gupta* were accepted, the independent requirement of fundamental fairness provides a separate and sufficient basis for denying dismissal.

### 4. Plaintiff's Claims for Breach of Contract (Count I) and Implied Covenant (Count II) Are Well-Pled

Plaintiff's breach of contract claim under Count I identifies explicit Bulletin provisions and contractual commitments ignored by the SOM Administration. The contention that the Bulletin allows "deviations" is a factual dispute that cannot be resolved on a motion to dismiss, and cannot be interpreted as a blanket permission to unilaterally change contract terms without notice, which could render the contract unenforceable. Specific breaches include: failure to provide timely and complete disclosure of evidence, unlawful expansion of charges (the "not being forthcoming" charge), and imposition of inconsistent penalties.

The actions, being disciplinary, required strict compliance with promised procedures. (MTD Opp. at 15–17). The SOM Administration breached the implied covenant of good faith and fair dealing (Count II) through acts of bad faith and by frustrating Plaintiff's reasonable expectations under the contract. These bad faith actions include: failure to provide timely and complete evidence disclosure (including exculpatory evidence), allowing conflicted Committee members, fabricating charges without proper referral, depriving Plaintiff of notice, misusing discretion by relying on speculation, imposing excessive, arbitrary, and inconsistent penalties, engaging in coercion and threats to force a false confession, improperly retaliating, and singling

out Plaintiff for AI scanning without cause. These actions reflect an abuse of discretion, evasion

of the contract's spirit, and a deliberate frustration of Plaintiff's justified expectations. (MTD Opp.

at 17).

### 5.   Plaintiff's Title VI Claims (Counts III & IV) Meet the Plausibility Standard

Defendants' reliance on "Alternate Explanations" improperly asks the Court to weigh

competing inferences against the facts in the complaint, which is prohibited at the motion to

dismiss stage. *Anderson News, LLC v. Am. Media, Inc*., 680 F.3d 162, 185 (2d Cir. 2012).

First, the SOM Administration intentionally discriminated against Plaintiff based on

national origin in violation of Title VI. This claim under Count III is supported by the selective

scrutiny of Plaintiff with an AI tool that was known to them to be biased. Plaintiff, a French

national and non-native English speaker, was the only one, out of over seventy students, singled

out for scrutiny using GPTZero. This tool was known by Yale to be unreliable, biased against non-

native English speakers, and unfit for academic discipline. Defendants' reliance on this tool despite

awareness of its flaws demonstrates discriminatory intent or deliberate indifference. Title VI

intentional discrimination can be established where a defendant acts with deliberate indifference

to known or obvious risks that its conduct will result in unlawful discrimination.

Second, the SOM Administration engaged in coercive tactics exploiting Plaintiff's foreign

status. Dean Scully explicitly threatened Plaintiff with deportation by stating his F1 visa could be

revoked, exploiting his foreign national status. This incident made Plaintiff's 'foreignness front of

mind,' demonstrating deliberate indifference and discriminatory intent designed to coerce a false

confession. The extensive procedural irregularities (withholding evidence, fabricating uncharged

offenses, improper expansion of investigation) undermine any claim of neutral action. (MTD Opp.

at 17–21).

Third, Plaintiff engaged in protected activity by objecting to being singled out for AI detection scrutiny based on his national origin and non-native English speaker status. Defendants' adverse actions, demonstrating a clear causal connection and retaliatory animus, constituted retaliation against Plaintiff under Title VI, including: introducing the new, uncharged accusation of "not being forthcoming"; expanding the investigation to unrelated coursework; imposing duplicative and excessive penalties; subjecting Plaintiff to coercive tactics; and failing to provide documents and exculpatory evidence.

Finally, Plaintiff's protected activity commenced well before the date Defendants assert. It began with the initial discriminatory scrutiny in June 2024 and was overtly implicated during the July 24, 2024, meeting when Dean Scully threatened deportation, which Plaintiff refused to confess under. Plaintiff's refusal constitutes protected activity. Following this, the expansion of the investigation by Chairman Choi on August 16, 2024, to unrelated coursework, and Dean Jain's improper directive leading to an "F" grade, contradicting prior assurances, illustrate a clear timeline of adverse actions. The close temporal proximity, procedural anomalies, and coercive tactics demonstrate retaliatory intent, supporting a plausible claim. (MTD Opp. at 21–26).

### 6. Plaintiff's Tort Claims (Counts V, VI, XII, XIII) Are Adequately Pleaded

Plaintiff's claim of intentional infliction of emotional distress under Count V was well-pleaded. The SOM Administration's conduct was extreme and outrageous. Dean Scully's statements suggesting Plaintiff could be deported, fabricating the "not being forthcoming" charge, and coercing a false confession, particularly within the formal context of the "august deliberative body" of the Honor Committee, rises to the level of "extreme and outrageous" behavior calculated to coerce, humiliate, and terrify. See *Pacella v. Tufts Univ. Sch. of Dental Med.*, 66 F. Supp. 2d 234, 241–42 (D. Mass. 1999). Defendants' conduct is distinguishable from cases concerning less

formal contexts. See *Greenhouse v. Yale Univ.*, No. 3:05CV1429 (AHN), 2006 WL 473724 (D. Conn. Feb. 28, 2006). (MTD Opp. at 26–28).

Next, the claim under Count VI of negligent infliction of emotional distress was also well pleaded. The SOM Administration owed a duty to conduct disciplinary proceedings with fairness and consistency. They breached this duty through procedural failures, improper reliance on biased AI tools, charge fabrication, coercion, and investigation expansion, creating an unreasonable and foreseeable risk of severe emotional distress. The distress suffered was severe and flowed directly from Defendants' negligent acts. (MTD Opp. at 28–29).

Third, Plaintiff has well pled a claim of defamation under Count XII. Defendants published false statements implying Plaintiff's academic dishonesty. The SAC specifically states that "one or more of the Honor Committee members publicly disclosed confidential information" to Plaintiff's classmates. The SOM Administration further communicated publicly that Plaintiff "improperly utilized AI" when the actual finding was "not being forthcoming". This constitutes defamation per se as it imputes dishonesty in his profession and education, and the falsity is a factual dispute inappropriate for dismissal. The false assertions were "echoed" in prominent secondary publications such as Bloomberg Law and the Yale Daily News. (MTD Opp. at 30–33).

Fourth, Plaintiff's false light invasion of privacy claim under Count XIII was also well pled. The SOM Administration gave publicity to matters concerning Plaintiff that placed him before the public in a false light (as academically dishonest and unethical), which would be highly offensive to a reasonable person. Publicity arose from the Committee members' disclosures to classmates and the subsequent statements echoed in publications. Plaintiff pleads actual malice through Defendants' reckless disregard, evidenced by reliance on the known-biased GPTZero tool, fabricating charges, and pervasive procedural irregularities. (MTD Opp. at 33–36).

### 7. Plaintiff's Promissory Estoppel (Count VII) and CUTPA (Count VIII) Claims are Well Pled

The claims under Count VII of promissory estoppel are also well pled. The SOM Administration made clear and unambiguous promises in its official publications (e.g., policy against use of AI detection tools, procedural fairness, adherence to procedures). Plaintiff reasonably and foreseeably relied upon these promises when he enrolled and paid substantial tuition. The SOM Administration directly contradicted these promises, resulting in significant detriment (loss of standing, reputation, career prospects). It would be unjust to permit the SOM Administration to avoid liability. (MTD Opp. at 29).

Similarly, Plaintiffs claim under Count VIII of a violation of the Connecticut Unfair Trade Practices Act (CUTPA) was well pled. The SOM Administration engaged in unfair and deceptive acts in the course of providing educational services. These acts include misrepresentations regarding the non-use of biased AI tools, false promises of procedural fairness, and promises not to impose penalties without fair process or coerce confessions. These acts offended public policy, were oppressive, and caused ascertainable loss (loss of standing, financial loss, reputational harm). (MTD Opp. at 29–30).

### 8. Declaratory Relief (Count IX) is Warranted and Opposition to Dismissal of Yale University Board of Trustees

Plaintiff seeks remedies including reversing the "F" grade, reinstatement, expungement of his disciplinary record, and restoration of his reputation. These remedies are appropriate to undo the harm caused by Defendants' arbitrary, capricious, and bad-faith actions. Since the "F" grade and disciplinary record cause ongoing harm, the requested relief is necessary to genuinely restore Plaintiff's standing. (MTD Opp. at 36–37).

### B.  Discovery Is Necessary and Fact-Intensive

Plaintiff's claims cannot be resolved in the abstract; they turn on factual disputes about how Yale handled its disciplinary process—whether charges were fabricated, exculpatory evidence withheld, committee members biased, sanctions inconsistent, or discriminatory threats made. These issues are not susceptible to resolution on the pleadings. They require the production of documents, internal communications, and testimony from administrators and committee members. Fact-intensive disputes are precisely the circumstances in which courts deny requests to stay discovery. See *Steuben Foods, Inc. v. Country Gourmet Foods, LLC*, No. 08-CV-561, 2009 WL 3191464, at *5 (W.D.N.Y. Sept. 30, 2009) (denying stay where claims were "fact-intensive and not resolvable as a matter of law"); *Guerrero v. Target Corp.*, No. 3:18-cv-1972, 2020 WL 4597313, at *2 (D. Conn. Aug. 11, 2020) (recognizing that fact disputes weigh against a stay).

Courts in this District consistently hold that where a plaintiff pleads specific departures from contractual and procedural guarantees, discovery is essential to develop the record. See *Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 657–58 (D. Conn. 2019) (breach of contract claims based on misconduct proceedings cognizable and requiring factual development); *McNeil v. Yale Univ.*, 436 F. Supp. 3d 489, 531 (D. Conn. 2020) (enforcing specific disciplinary procedure promises). As Judge Bolden recently emphasized in *Doe v. Indian Mountain Sch.*, No. 3:24-cv-1402 (D. Conn. Sept. 30, 2025)(Ex. A), whether a school acted arbitrarily or in bad faith is "better addressed at summary judgment, following the completion of discovery, rather than now." The same principle applies here.

Here are some concrete examples that underscore why discovery is indispensable. First, charges against Plaintiff were fabricated. After Yale failed to prove improper use of AI, it invented the charge of "not being forthcoming" without notice or hearing. Discovery is needed to identify

who authorized this charge, what communications preceded it, and whether other students were ever disciplined in this manner.

Second, the SOM Administration withheld evidence. Over ninety pages of materials—including exculpatory GPTZero results—were concealed. Discovery will show what was withheld, who decided to withhold it, and whether such concealment was consistent with or contrary to Yale's policies. Third, the SOM Administration was biased and had conflicts of interest. Conflicted Honor Committee members remained on the panel despite objections. Discovery is required to obtain records of recusals, internal deliberations, and precedent from prior cases.

Fourth, Plaintiff was given inconsistent sanctions. Plaintiff's sanctions were harsher than those imposed in comparable cases. Discovery of prior Honor Code case files and sanctioning practices is necessary to test that claim. Fifth, the SOM Administration engaged in discrimination and retaliation. Yale targeted Plaintiff with a biased AI tool and threatened deportation, conduct directly tied to his national origin. Discovery is required to uncover Yale's internal discussions regarding AI detection tools, its knowledge of their bias, and whether similar threats were made to other international students.

These are not abstract disputes that can be decided on the face of the pleadings. They go to the heart of whether the SOM Administration breached contractual obligations, acted in bad faith, and discriminated in violation of federal law. The answers lie in Yale's records and testimony, not in the four corners of the complaint or Defendants' briefing.

Thus, because Plaintiff's claims are inherently fact-bound, discovery is not just helpful but essential. Staying discovery would improperly insulate the SOM Administration from accountability and force Plaintiff to oppose dismissal motions without the factual record necessary

to demonstrate the arbitrariness, bias, and discrimination he experienced. The Federal Rules are designed to prevent exactly that result.

### C.  Plaintiff Will Suffer Severe Prejudice from Delay

The prejudice to Plaintiff from halting discovery is immediate, concrete, and irreparable. Unlike the ordinary inconvenience Defendants claim, Plaintiff faces continuing harms to his academic standing, reputation, and professional future with every month this litigation is delayed.

First, a stay prolongs the stigma of Plaintiff's record of suspension. The suspension and failing grade remain on his transcript and prevent him from completing his degree in good standing. Each semester of delay in correcting Plaintiff's academic record, deprives him of career opportunities tied to this blemished record. Prospective employers and business partners inevitably draw negative inferences from his record, and those reputational harms cannot be undone with money damages. See *Guerrero v. Target Corp.*, No. 3:18-cv-1972, 2020 WL 4597313, at *2 (D. Conn. Aug. 11, 2020) (recognizing that prejudice to the non-moving party outweighs ordinary discovery burdens).

Second, delay risks spoliation of evidence and fading witness memories. Plaintiff's claims require discovery into communications among Yale administrators and Honor Committee members, recollections of deliberations, and contemporaneous understanding of the use of GPTZero and other AI tools. Even with litigation holds in place, witness recollections inevitably diminish over time, and subtle but critical evidence—such as context around meetings, threats, or committee dynamics—may be lost. Courts recognize that these types of evidentiary harms constitute severe prejudice warranting denial of a stay. See *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002).

Third, Plaintiff continues to suffer reputational injury every day discovery is delayed. Defendants' public and internal disclosures accusing him of dishonesty have already spread within his professional and academic community, and secondary publications have echoed these false assertions. Until Plaintiff has an opportunity to prove the arbitrariness and bad faith of Defendants' actions through discovery, those allegations remain untested and unchecked. Delay thus perpetuates stigma and compounds the reputational harm. See *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 602 (D. Mass. 2016) (recognizing that reputational harms from flawed disciplinary processes are real and cognizable).

For all these reasons, the prejudice factor weighs overwhelmingly against a stay.

### D. Defendants Face Only Routine Litigation Burdens

By contrast, the SOM Administration face only the ordinary burdens of litigation. Responding to discovery is not "prejudice"—it is a normal incident of defending a lawsuit, particularly where Defendants themselves previously sought expedited discovery in this very case. Their speculative claims of burden—citing international data collection or reputational sensitivities—are neither unusual nor sufficient to constitute "good cause" under Rule 26(c). Courts routinely hold that ordinary litigation costs do not justify halting discovery. *Johnson v. N.Y. Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002).

Defendants' exaggeration of supposed burdens only underscores the imbalance: Plaintiff suffers ongoing academic, professional, and reputational harm from delay, while Defendants confront nothing more than the standard obligations all litigants face.

### E. Judicial Economy Favors Denial

Judicial economy strongly favors allowing discovery to proceed. Even if Defendants succeed in narrowing certain claims, the core discovery into Yale's handling of Plaintiff's

disciplinary process—communications among administrators, deliberations of the Honor Committee, sanctioning practices, and Yale's knowledge of AI-tool bias—will still be necessary. Halting discovery now would only ensure duplication of effort later, requiring the Court to revisit discovery disputes and forcing the parties to redo discovery under compressed schedules. See *Hachette Distrib., Inc. v. Hudson Cty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991) (denying stay because discovery "would likely be relevant regardless of the outcome of the motion to dismiss"); *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (warning that stays pending dispositive motions often "prolong litigation" rather than streamline it).

Moreover, Courts in this District consistently deny stays where a dispositive motion will not dispose of the entire action. See *Guerrero v. Target Corp.*, No. 3:18-cv-1972, 2020 WL 4597313, at *2 (D. Conn. Aug. 11, 2020) (declining stay because "substantial discovery would be required regardless of the motion's outcome"). Here too, the overlap in discovery across Plaintiff's contract, tort, and Title VI claims means that even partial dismissal would not materially reduce the scope of discovery.

This very District has recognized that questions of arbitrariness, bad faith, and fairness in disciplinary proceedings cannot be resolved at the pleading stage and must await a developed factual record. *Indian Mountain Sch.*, 2025 WL 4443065, at *7. That reasoning applies squarely here: discovery is not a luxury but a prerequisite for efficient adjudication. Delaying discovery would only compress inevitable disputes and multiply judicial involvement later. Proceeding now promotes steady case management, avoids duplication, and aligns with this District's recognition that disciplinary claims cannot be resolved without factual development.

## IV.    CONCLUSION

Defendants have not carried their heavy burden of showing good cause for a stay. Their motion to dismiss is not substantially grounded, and Plaintiff has demonstrated a strong likelihood of success on the merits. Plaintiff's claims are inherently fact-intensive and cannot be adjudicated without discovery. Delay would inflict severe and irreparable prejudice on Plaintiff, while Defendants face only the routine obligations of litigation. Finally, judicial economy is best served by allowing discovery to proceed now, rather than duplicating effort and compressing disputes later. The balance of factors weighs overwhelmingly in favor of moving this case forward.

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to stay discovery in its entirety.

Dated: October 8, 2025
New York, New York

Respectfully submitted,

**NESENOFF & MILTENBERG, LLP**

**/s/ Stuart Bernstein**
**Stuart Bernstein (admitted pro hac vice)**
**Andrew T. Miltenberg**
**(admitted pro hac vice)**
**Kimberly S. Courtney**
**(admitted pro hac vice)**
**363 Seventh Avenue, 5th Floor**
**New York, New York 10001**
**T: (212) 736-4500**
**sbernstein@nmllplaw.com**
**amiltenberg@nmllplaw.com**
**kcourtney@nmllplaw.com**

**Audrey A. Felsen, Esq.**
**Koffsky & Felsen, LLC**
**1261 Post Road, Suite 202B**
**Fairfield, Connecticut 06824**
**T: (203) 327-1500**
**Federal Bar No.: ct20891**
**audrey@koffskyfelsen.com**

***Attorneys for Plaintiff***

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 8th day of October 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Stuart Bernstein*
Stuart Bernstein