## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

<table>
<tr><td>

**THIERRY RIGNOL,**

                        ***Plaintiff,***

**v.**

**YALE UNIVERSITY, YALE UNIVERSITY BOARD OF TRUSTEES, WENDY TSUNG in her individual and official capacity, K. GEERT ROUWENHORST in his individual and official capacity, JACOB THOMAS in his individual and official capacity, SHERILYN SCULLY in her individual and official capacity, JAMES CHOI in his individual and official capacity, and ANJANI JAIN in his individual and official capacity,**

                        ***Defendants.***

</td><td>

**Civil Action No. 3:25-CV-00159-SFR**


**October 8, 2025**

</td></tr>
</table>

## <u>NOTICE OF SUPPLEMENTAL AUTHORITY</u>

The Plaintiff Thierry Rignol (hereinafter "Plaintiff") hereby gives Notice of Supplemental Authority in furtherance to his Opposition (ECF# 107) to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF# 106).

On September 30, 2025 United States District Judge Victor A. Bolden, of the District of Connecticut, issued an Order in the matter of *Jane Doe v. Indian Mountain School, et.al* 3:24-cv-01402 (attached), that addresses the Connecticut Supreme Court's decision in *Gupta v. New Britain Gen. Hosp.*, 239 Conn. 574, 591, 687 A.2d 111 (1996). Judge Bolden denied Defendants' motion seeking the dismissal of contract and tort claims, among others, arising from school disciplinary proceedings. The Court held that whether the school acted arbitrarily or in bad faith is "better addressed at summary judgment, following the completion of discovery, rather than now." Judge Bolden's decision, although not "binding" on this Honorable Court, is very pertinent and significant on the very issues before your Honor.

**THE PLAINTIFF**
**THIERRY RIGNOL**

**NESENOFF & MILTENBERG, LLP**

*/s/ Stuart Bernstein*
**Stuart Bernstein (admitted pro hac vice)**
**Andrew T. Miltenberg**
**(admitted pro hac vice)**
**Kimberly S. Courtney**
**(admitted pro hac vice)**
**363 Seventh Avenue, 5th Floor**
**New York, New York 10001**
**T: (212) 736-4500**
**sbernstein@nmllplaw.com**
**amiltenberg@nmllplaw.com**
**kcourtney@nmllplaw.com**


**KOFFSKY & FLESEN, LLC**

*/s/ Audrey Felsen*
**Audrey A. Felsen, Esq.  (ct20891)**
**1261 Post Road, Suite 202B**
**Fairfield, Connecticut 06824**
**203-327-1500**
**audrey@koffskyfelsen.com**

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 8, 2025, a copy of the foregoing was filed electronically.

Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing

system or by mail to anyone unable to accept electronic filing as indicated on the Notice of

Electronic Filing. Parties may access this filing through the court's CM/ECF System.


*/s/ Stuart Bernstein*
Stuart Bernstein, Esq.

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JANE DOE, as parent and natural Guardian
of JOHN DOE, a minor,
    *Plaintiff*,

    v.

INDIAN MOUNTAIN SCHOOL, AMY
TEDDER, and JODY REILLY SOJA,
    *Defendants.*

No. 3:24-cv-01402 (VAB)

## RULING AND ORDER ON MOTION TO DISMISS

Jane Doe, on behalf of her minor son John Doe ("Plaintiff"), has sued Indian Mountain

School (also referred to as "IMS"), and school administrators Jody Soja and Amy Tedder

(collectively "Defendants"), and has alleged nine causes of action against them under federal and

state law.

The Defendants have moved to dismiss counts four through nine, which allege violations

of state contract and tort law. Specifically, Defendants seek to dismiss the claims against Indian

Mountain School for breach of contract, negligence, and negligent hiring, supervision, and

retention; the claims against Ms. Soja and Ms. Tedder for intentional infliction of emotional

distress, and negligent infliction of emotional distress; and the claim against Defendants for

defamation.

For the following reasons, the motion to dismiss is **DENIED** without prejudice to

renewal.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

John Doe is a ten-year-old boy with dyslexia and attention deficit hyperactivity disorder ("ADHD") who attended Indian Mountain School, a private pre-K through ninth grade school in Lakeville, Connecticut, from September 2020 until February 23, 2024. Compl. ¶¶20–21, ECF No. 1 (Aug. 8, 2024) ("Compl."). During this time, Ms. Soja was the Head of School, and Ms. Tedder was the Interim Head, and later Head, of Lower School. *Id.* ¶¶15–16. John Doe was enrolled in the school's "Ascend" program for students with dyslexia and learning-based language differences and was on track to graduate from the program by the end of the 2023–2024 school year. *Id.* ¶37.

The allegations in the lawsuit stem from a series of events that occurred during the 2023–2024 school year. During the 2023–2024 school year, John Doe allegedly was the subject of repeated bullying and harassment by fellow students, and the Defendants allegedly reprimanded John Doe, rather than the students who were allegedly bullying him. *Id.* ¶¶25–26.

Jane Doe alleges that the Defendants discriminated and retaliated against John Doe on the basis of "every characteristic of his personhood," namely being white, a male, and a student with learning disabilities. *Id.* ¶¶1, 12. Jane Doe further alleges that despite the discriminatory actions John Doe allegedly faced, he "received glowing reports about his progress and performance in school," but Indian Mountain School nonetheless "constructively expelled John Doe, without any grounds for doing so." *Id.* ¶¶30–32.

### B. Procedural History

On August 30, 2024, Jane Doe, on John Doe's behalf, filed the Complaint.

On November 5, 2024, Defendants moved to dismiss, in part, the Complaint. Mot. to Dismiss, ECF No. 22; Mem. of Law in Supp. of Mot. Dismiss, ECF No. 22-1 ("Mem.").

On November 25, 2024, Ms. Doe filed a memorandum in opposition to Defendants' motion to dismiss. Pl.'s Mem. of Law in Opp. to Defs.'s Partial Mot. to Dismiss, ECF No. 26 ("Opp'n").

On December 1, 2024, Defendants filed their reply ECF No. 31 ("Reply").

## II.    STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the

plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.    DISCUSSION

Defendants move to dismiss Counts Four through Nine of the Complaint, which are all based in state contract and tort law. Count Four alleges breach of contract against Indian Mountain School; Count Five alleges negligence against Indian Mountain School; Count Six alleges negligent hiring, supervision, and retention against Indian Mountain School; Count Seven alleges intentional infliction of emotional distress against Ms. Tedder and Ms. Soja; Count Eight alleges negligent infliction of emotional distress against Ms. Tedder and Ms. Soja; and Count Nine alleges defamation against all of the Defendants.

The Court will address each of the claims in turn.

## A. The Breach of Contract Claim

A breach of contract claim consists of the following elements: (1) the formation of an agreement, (2) performance by one party, (3) breach of the agreement by the other party, and (4) damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 87 A.3d 534, 540 (Conn. 2014). Connecticut courts have recognized a contractual relationship between students and educational institutions. *See Burns v. Quinnipiac Univ.*, 991 A.2d 666, 673 (Conn. App. Ct. 2010) (recognizing a contractual relationship between a resident and a medical school). In examining an educational contract, documents, such as the catalogues, bulletins, circulars, and regulations of an institution, as well as the oral and written expressions of the parties, may result in contractual obligations and define the scope of these obligations. *See id.* (allowing the examination of a financial aid letter, a document entitled "Policies and Procedures Concerning Financial Aid Awards," and the testimony from various deans).

All contracts carry "an implied covenant of good faith and fair dealing," which requires both parties to refrain from doing "anything that will injure the right of the other to receive the benefits of the agreement." *Hudson United Bank v. Cinnamon Ridge Corp.*, 845 A.2d 417, 431 (Conn. App. Ct. 2004). "The covenant . . . presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 388 (Conn. 2004) (citing *Celentano v. Oaks Condo. Ass'n*, 830 A.2d 164, 188 (Conn. 2003)). To fulfill its duty, a party may not "do anything that will injure the right of the other to receive the benefits of the agreement." *Id.* at 388 (citation modified) (quoting *Gaudio v. Griffin Health Servs. Corp.*, 733 A.2d 197, 221 (Conn. 1999) (Callahan, C.J., dissenting)).

5

Before asserting bad faith or fair dealing, a plaintiff "must prove three elements: 'first, that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; second, that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and third, that when committing the acts by which it injured the plaintiff's right to receive benefits he reasonably expected to receive under the contract, the defendant was acting in bad faith.'" *Bagley v. Yale Univ.,* 42 F. Supp. 3d 332, 359-60 (D. Conn. 2014) (quoting *Franco v. Yale Univ.*, 238 F. Supp. 2d 449, 455 (D. Conn. 2002)). "Bad faith . . . implies both 'actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation . . . prompted . . . by some interested or sinister motive.'" *Habetz v. Condon*, 618 A.2d 501, 504 (Conn. 1992) (quoting Black's Law Dictionary (5th ed. 1979)).

In Count Four of the Complaint, Jane Doe alleges that Indian Mountain School breached the 2023–2024 enrollment contract "by denying John re-enrollment for the upcoming year, imposing conditions on John's possible continuation of his education or re-enrollment at IMS in the future and forcing John's parents to withdraw him from school when there were no permissible grounds for taking those actions pursuant to the enrollment contract," Compl. ¶310, and that they violated the Parent and Student Handbook by "discriminating against John on the basis of his 'disability,' gender and race" and "by denying re-enrollment to John, threatening to expel him if he stayed at IMS and forcing his parents to withdraw John from IMS," *id.* ¶¶311–12. Jane Doe alleges that Indian Mountain School breached specific provisions in both the re-enrollment contract and handbook, acted arbitrarily, capriciously, and in bad faith, and also breached the implied covenant of good faith and fair dealing.

Defendants argue that this claim must be dismissed. In their view, the Connecticut Supreme Court's decision in *Gupta v. New Britain General Hospital*, 687 A.2d 111 (Conn. 1996), which bars educational malpractice suits, applies to Plaintiff's breach of contract claim, as well as to any negligence-based tort claims.

In response, Jane Doe argues that *Gupta* does not apply "because the claim concerns the constructive expulsion of John from IMS for 'disciplinary reasons, not academic reasons.'" Opp'n at 10 (internal citation omitted).

In reply, Defendants argue that this Court should "adopt the persuasive decisions issued by other Courts in this District that have applied *Gupta* to school decisions involving discipline," Reply at 1, and in doing so, should find that Ms. Doe has not sufficiently alleged that IMS "failed to fulfil [sic] a specific contractual promise distinct from any overall obligation to offer a reasonable program." *Gupta*, 687 A.2d at 120.

The Court disagrees, at least, for right now.

In *Gupta*, consistent with the notion that "tort principles are difficult, if not impossible, to apply in the academic environment, [and thus] courts have almost universally held that claims of 'educational malpractice' are not cognizable," *id.* at 119 (citation modified), the Connecticut Supreme Court also extended this principle to contract claims sounding in educational malpractice, *id.* ("The jurisprudential considerations that shed doubt on the viability of the tort of educational malpractice also inform our analysis of a *contract* claim based on inadequate educational services."); *see id.* ("Where the essence of the complaint is that [an educational institution] breached its agreement by failing to provide an effective education, the court is . . . asked to evaluate the course of instruction [and] called upon to review the soundness of the method of teaching that has been adopted by [that] educational institution. This is a project that

the judiciary is ill equipped to undertake." (alteration in original) (citation and internal quotation marks omitted)); *see also Bd. of Curators v. Horowitz*, 435 U.S. 78, 90 (1978) ("Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking.").

Nevertheless, the Connecticut Supreme Court has recognized two exceptions "wherein courts will entertain a cause of action for institutional breach of a contract for educational services." *Gupta*, 687 A.2d at 120.  The first occurs when "the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field," *id.*, and the second occurs when an "educational institution failed to fulfil [sic] a specific contractual promise distinct from any overall obligation to offer a reasonable program," *id.* And *Gupta* does not appear to preclude contract claims where the educational institution acts arbitrarily, capriciously, or in bad faith. *Id.* at 595 (stating that "in exercising its professional judgment, an educational institution does not have license to act arbitrarily, capriciously, or in bad faith," and that "such a substantial departure from academic norms . . . may constitute the breach of an educational contract by a private institution" (citations omitted)).

At this stage of this case, however, the legal viability of Jane Doe's breach of contract claim cannot yet be determined. [1] Indeed, the issues involved in this case, i.e., the applicability of

---

[1] Significantly, there is no binding authority establishing whether a claim against a school's disciplinary decisions constitutes an educational malpractice claim under *Gupta*. The Connecticut Supreme Court has opined on the judiciary's suitability for hearing claims regarding school disciplinary decisions only in a concurring opinion in *Packer v. Bd. of Educ*, 717 A.2d 117, 137–38 (1998) (Norcott, J., concurring) ("It is a well established principle that courts should exercise caution in interfering with school discipline. . . . We have neither the expertise nor the inclination to assume the micromanagement of student discipline. Schools face student conduct that simply defies a standard response and the statute provides the school board the flexibility to demonstrate that certain conduct meets the criteria for student expulsion. I am loathe to see the judicial system intervene in such a dynamic environment in which it has little expertise. In times that are marked daily with tales of violence and danger in our public schools,

*Gupta*, are better addressed—and have been routinely addressed by both courts in this District and this State's courts—at the summary judgment stage, following the completion of discovery, rather than now. *See, e.g.*, *Ranciato v. Hopkins Sch.*, No. CV-21-6110316-S, 2022 WL 2426313, at *12 (Conn. Super. Ct. July 1, 2022) (addressing whether there were genuine issues of material as to whether the Hopkins School "did not breach its contract with the plaintiff"); *Greenberg v. The Gunnery, Inc.*, No. LLI CV-20-6025167-S, 2022 WL 1019588, at *5 (Conn. Super. Ct. Feb. 8, 2022) (addressing whether there were genuine issues of fact as to whether the Gunnery "breached its contract with the plaintiff"); *Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 671 (D. Conn. 2019) (addressing whether there were genuine issues of fact as to "whether [Quinnipiac University's] policies created an enforceable contract"); *McCarty v. Yale Univ.*, No. CV166063796S, 2017 WL 4508771, at *2–3 (Conn. Super. Ct. Aug. 29, 2017) (addressing whether there were genuine issues of fact as to whether Yale University had breached the terms of its Professional and Academic Ethics Code); *Bass ex rel. Bass v. Miss Porter's Sch.*, 738 F. Supp. 2d, 307, 322 (D. Conn. 2010) (addressing whether there were genuine issues of fact as to whether the Miss Porter's School "breached a contractual obligation contained in [its] Handbook"); *Jacobs v. Ethel Walker Sch. Inc.*, No. CV020515279S, 2003 WL 22390051, at *6 (Conn. Super. Ct. Sept. 30, 2003) (addressing whether there were genuine issues of fact as to whether the Ethel Walker School Inc. "conducted the disciplinary proceedings against the plaintiff Christina Jacobs in a manner that arguably rises to being arbitrary and capricious").

Accordingly, Defendant's motion to dismiss the breach of contract claim, Count Four of the Complaint, will be denied.

---

we do society no favor by toying with the few tools of discipline left to school authorities." (citations omitted)); *see also id.* (collecting cases).

**B.  The Negligence Claim**

Under Connecticut law, "[t]he essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *McDermott v. State*, 113 A.3d 419, 425 (Conn. 2015) (quoting *LePage v. Horne*, 809 A.2d 505, 510 (Conn. 2002)).

Jane Doe alleges that Indian Mountain School owed John a duty "to protect his health and safety while John was in IMS's care[,]" and that it breached this duty when "IMS employees, Teacher 1 and Tedder, repeatedly ignored the physically aggressive, bullying behavior of other students towards John including an attempted bite mark on John's arm, aggressive elbowing of John in class and a 'bear hug' move during recess[]" and when it allowed "Teacher 1 to exhibit hostile, 'angry' behavior in the classroom, and to single out John for punishment as opposed to the collective punishment imposed on other students." Compl. ¶¶322, 323, 326. Jane Doe also claims that John Doe "suffered acute emotional, psychological and physical harm, as well as economic losses" that were a direct and proximate result of Indian Mountain School's actions. *Id.* ¶¶327–29.

Defendant argues that *Gupta* precludes nearly all negligence claims against schools, except those that allege physical injury, and because Plaintiff "merely alleg[ed] in a conclusory fashion that John somehow suffered 'physical harm' in Paragraph 327 of the Complaint[, he] fails to satisfy the pleading standards articulated by the U.S. Supreme Court in *Iqbal*." *See* Mem. at 20–21 (internal citation omitted).

The Court disagrees, at least, for right now.

Once again, under *Gupta*, this case's negligence-based claims related to Indian Mountain School's disciplinary actions may not be cognizable. *See Gupta*, 687 A.2d at 119 ("[T]ort principles are difficult, if not impossible, to apply in the academic environment, [and thus] courts

10

have almost universally held that claims of 'educational malpractice' are not cognizable." (footnote omitted)). But, consistent with this Court's approach above with respect to the breach of contract claim—one consistent with that of many other courts—the viability of this claim is better addressed at the summary judgment stage, rather than now.

Accordingly, Defendants' motion to dismiss the negligence claim, Count Five of the Complaint, will be denied.

### C. The Negligent Hiring, Supervision, and Retention Claim

"An employer may be held directly liable for negligent hiring if the 'employer's own negligence in failing to select an employee fit or competent to perform the services of employment' caused an injury." *Karlen v. Uber Techs., Inc.*, 3:21-cv-835 (VAB), 2023 WL 3570635, at *3 (D. Conn. May 19, 2023) (quoting *Brooks v. Sweeney*, 9 A.3d 347, 354 n.12 (Conn. 2010)). "An employer, however, does not have a duty to protect a plaintiff from an employee's tortious acts, whether due to allegedly negligent hiring or supervision, 'unless the [employer] knew or reasonably should have known of the employee's propensity to engage in that type of tortious conduct.'" *Id.* (quoting *Michalsky v. Moffly Publ'n, Inc.*, FSTCV196042420S, 2020 WL 5537003, at *5 (Conn. Super. Ct. Aug. 13, 2020)).

Jane Doe alleges three categories of negligent conduct. First, Indian Mountain School negligently hired (1) Ms. Tedder as the Head of the Lower School; (2) Teacher 1; (3) the Director of Equity, Inclusion, and Belonging; and (4) the Director of Admissions. Plaintiff alleges that they lack the requisite experience or were not hired as part of a competitive process. *See* Compl. ¶¶244–245, 251, 253, 256–59, 335–336, 342, 344–346. Second, Indian Mountain School negligently supervised Ms. Tedder, Ms. Soja, and Teacher 1, thereby creating a "hostile learning environment." *Id.* ¶341. Third, Indian Mountain School negligently retained Teacher 2,

who had an alleged history of bullying students. *Id.* ¶343.

Defendant argues that these claims are barred by *Gupta*, and therefore Plaintiff must show that the school acted arbitrarily, capriciously, or in bad faith. Mem. at 23. Defendant also argues that Plaintiff will be unable to establish the foreseeability necessary to establish a claim of negligent hiring, supervision, and/or retention. *Id.* at 25.

The Court disagrees, at least, for right now.

Consistent with the approach above, this claim will be better addressed at the summary judgment stage, rather than now.

Accordingly, Defendants' motion to dismiss the negligent hiring, supervision, and retention claim, Count Six of the Complaint, will be denied.

### D.  The Intentional Infliction of Emotional Distress Claim

Under Connecticut law, four elements must be established to prevail under a claim for intentional infliction of emotional distress: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ.,* 757 A.2d 1059, 1062 (Conn. 2000).

Jane Doe alleges that Ms. Soja and Ms. Tedder "fabricat[ed] a pattern of behavior and narrative that IMS could no longer 'support' John" and that they knew or should have known that their actions would result in harm to John, since John's cognitive behavioral therapist told Ms. Tedder that removing John from Indian Mountain School would be detrimental to his mental health. Compl. ¶¶352–53. Plaintiff also states that "Tedder and Soja's concerted action to harm John was extreme and outrageous, exceeded all bounds usually tolerated by decent society and

was especially calculated to cause the serious mental distress that John suffered as a result of being excluded from his school and community." *Id.* ¶361. Specifically, Plaintiff alleges that Ms. Tedder and Ms. Soja "exploited and exaggerated John's ADHD symptoms to create a false narrative about him that remains in his permanent education record," told Student A's parents that John was leaving the school, and "exhibited reckless indifference to John's rights." *Id.* ¶¶358–59, 364.

Defendant argues that the facts alleged do not constitute extreme and outrageous conduct because "they simply do not rise to the level of 'atrocious,' 'utterly intolerable in a civilized community,' or 'beyond all possible bounds of decency.'" Mem. at 28 (quoting *Appleton*, 757 A.2d at 1062).

The Court disagrees, at least, for right now.

While there is a serious question as to whether this claim can survive, *see, e.g.*, *Mara v. MacNamara*, 3:14–CV–01095 (RNC), 2015 WL 4392956, at *12 (D. Conn. July 12, 2015) (dismissing intentional infliction of emotional distress claim based on "the University's unwarranted imposition of discipline"); *Greenhouse v. Yale University*, No. 3:05 Civ. 1429 (AHN), 2006 WL 473724, at *3 (D. Conn. Feb. 28, 2006) (dismissing an intentional infliction of emotional distress claim after concluding that the actions of teachers and students did not constitute extreme and outrageous conduct), [2] given the Court's decision above regarding the other claims, the Court will exercise its "inherent authority to manage [its] docket[ ] and

---

[2] Notably, the parents of John Doe withdrew him from Indian Mountain School in the middle of the school year, and Indian Mountain School did not expel John. And, even if Indian Mountain School had expelled John, "the act of [expulsion]. . . does not transgress the bounds of socially tolerable behavior and is neither extreme nor outrageous." *Shore v. Mirabilio*, No. 3:16-CV-2078 (VLB), 2018 WL 1582548, at *4 (D. Conn. Mar. 29, 2018) (internal citation and quotation marks omitted) (collecting cases). As a result, informing John's parents that they would not be offered a re-enrollment contract for the following school year, or that Indian Mountain School would be unable to support John in the upcoming school year, are not likely to form the basis of a viable intentional infliction of emotional distress claim.

courtroom[ ] with a view toward the efficient and expedient resolution of cases," *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016), and defer consideration of this issue until the summary judgment stage.

Accordingly, Defendants' motion to dismiss the intentional infliction of emotional distress claim, Count Seven of the Complaint, will be denied.

### E. The Negligent Infliction of Emotional Distress Claim

Under Connecticut law, there are four "elements of the cause of action for negligent infliction of emotional distress: (1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 815 A.2d 119, 127 (Conn. 2003).

Jane Doe alleges that Ms. Tedder and Ms. Soja "fabricat[ed] a pattern of behavior and narrative that IMS could no longer 'support' John" which led to his parents withdrawing him from IMS, and that they should have realized that doing so would "create an unreasonable risk of causing acute emotional distress, psychological and physical harm to John." Compl. ¶¶366–367

Defendants argue that *Gupta* precludes the NIED claim, and that to prevail, Plaintiff has to show that the school's actions lacked a "discernable rational basis" and that they were arbitrary, capricious, or done in bath faith. Mem. at 33; *see also Bass*, 738 F. Supp. 2d at 326–37. Defendant argues that "the facts alleged do not set forth arbitrary and capricious conduct" and that the plain language of the enrollment contract provided a discernible rational basis for the

school's disciplinary actions. Mem. at 33–34.

The Court disagrees, at least, for right now.

Once again, rather than resolve this claim at this stage of the case, the Court will await the close of discovery and revisit the issue at the time for summary judgment. *See Dietz*, 579 U.S. at 47 ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

Accordingly, Defendants' motion to dismiss the negligent infliction of emotional distress claim, Count Eight of the Complaint, will be denied.

### F. The Defamation Claim

"Under Connecticut law, to establish a prima facie case of defamation a plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Bagley*, 42 F. Supp. 3d at 364 (internal quotation marks and citation omitted); *see also Gambardella v. Apple Health Care, Inc.*, 969 A.2d 736 (Conn. 2009); Restatement (Second) of Torts § 559 (Am. Law Inst. 1977).

"To be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." *Daley v. Aetna Life & Cas. Co.*, 734 A.2d 112, 129 (Conn. 1999). "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known." *Goodrich v. Waterbury Republican-Am., Inc.*, 448 A.2d 1317, 1321 (Conn. 1982). "An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact." *Id.* Even when a statement may appear to be factual, "it remains an

opinion 'if it is clear from the *context* that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated.'" *Id.* (quoting Restatement (Second) of Torts § 566 (Am. Law. Inst. 1977)) (emphasis in original)

In deciding whether an allegedly defamatory statement is opinion or fact, there are three factors to consider: "(1) whether the circumstances in which the statement is made should cause the audience to expect an evaluative or objective meaning; (2) whether the nature and tenor of the actual language used by the declarant suggests a statement of evaluative opinion or objective fact; and (3) whether the statement is subject to objective verification." *NetScout Sys., Inc. v. Gartner, Inc.*, 223 A.3d 37, 49–50 (Conn. 2020). "[T]he important point is whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." *Goodrich*, 448 A.2d at 1321–22 (internal quotation marks omitted) (first citing 1 Harper & James, op. cit., § 5.28, p. 458; and then citing *Mashburn v. Collin*, 355 So.2d 879, 885 (La. 1977)).

Jane Doe alleges that Ms. Tedder defamed John Doe in his winter progress report, which she then published to the Indian Mountain School electronic student records system and shared with Ms. Soja, and that the report caused John Doe to suffer reputational harm and severe mental anguish. Compl. ¶¶ 379–88.

Defendants argue that the statements in John Doe's winter progress report are expressions of opinions, not statements of fact, and are therefore not actionable in a defamation claim. Defendants also argue that this Court should extend *Gupta's* rationale, since "the very ability of educators to provide honest critiques is the bedrock of meaningful learning" and judicial review of educator feedback would "require this Court to review the 'soundness' of IMS's methods of student evaluation." Mem. at 37–38.

16

In response, Jane Doe argues that *Gupta* cannot serve as a bar to the defamation claims against Ms. Tedder and Ms. Soja, the individual defendants, and that the contested statements are not protected opinion because they "relate to an event or state of affairs that existed in the past or present and is capable of being known." Opp'n at 39 (citing *Grossman v. Computer Curriculum Corp.*, 131 F. Supp. 2d 299 (D. Conn. 2000)).

The Court disagrees but will ultimately resolve this issue later.

"[T]he determination of whether statement is opinion or rhetorical hyperbole as opposed to a factual representation is a question of law for the court." *NetScout Sys., Inc.*, 223 A.3d at 51 (alteration in original) (internal quotation marks omitted) (quoting *Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2nd Cir. 1985)). "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known . . . . An opinion, on the other hand is a personal comment about another's conduct, qualifications, or character that has some basis in fact." *Grossman*, 131 F. Supp. 2d at 312 (alteration in original) (internal quotations omitted) (quoting *Goodrich*, 448 A.2d at 1321). In distinguishing between opinion and fact, a court may consider factors such as "(l) the context and circumstances, (2) the language used, and (3) whether the statement is objectively capable of being proved true or false." *Johnson v. Schmitz*, 119 F. Supp. 2d 90, 101 (D. Conn. 2000).

Regardless of whether *Gupta* applies to defamation claims in the educational setting, based wholly on the allegations in the Complaint, any statements by Ms. Tedder about John Doe in his winter progress report are likely opinions as a matter of law, and thus cannot form the basis for a defamation claim. *See NetScout Sys., Inc.*, 223 A.3d at 50–51 ("Courts generally have held that claims for defamation based upon ratings or grades fail because [ratings or grades]

cannot be objectively verified as true or false and thus are opinion . . . .") (alteration in original) (internal quotation marks and citation omitted).

Nevertheless, rather than resolve this claim at this stage of the case, the Court will await the close of discovery and revisit the issue at the time for summary judgment. *See Dietz*, 579 U.S. at 47.

Accordingly, Defendants' motion to dismiss the defamation claim, Count Nine of the Complaint, will be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED** without prejudice to renewal.[3]

**SO ORDERED** at New Haven, Connecticut, this 30th day of September, 2025.

/s/ Victor A. Bolden_____
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[3] As this Court's Ruling and Order should make clear, at least some of Plaintiff's claims, such as the intentional infliction of emotional distress and defamation claims, are likely not viable, and quite likely to be dismissed at some point in this litigation. As a result, this decision has been issued without prejudice, in the event that the continued inclusion of these claims, or any others, unduly complicates the conclusion of this case's discovery phase. In short, this Court's exercise of its "inherent discretion" under *Dietz* to allow these claims to proceed will be revisited, to the extent necessary.